UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SG COWEN & CO., LLC,<br><br>Plaintiff,<br><br>v.<br><br>TWIN CITY FIRE INSURANCE COMPANY,<br><br>Defendant. | CIVIL ACTION NO. 05-11106 (PBS) |

**JOINT STATEMENT PURSUANT TO LOCAL RULE 16.1**

Pursuant to Local Rule 16.1, Plaintiff SG Cowen & Co., LLC ("SG Cowen"), and Defendant Twin City Fire Insurance Company ("Twin City"), having conferred as required by Local Rule 16.1(B), hereby submit the following Local Rule 16.1(D) Joint Statement:

**I.   AGENDA FOR SCHEDULING CONFERENCE**

The parties propose that the pre-trial scheduling matters set forth in Section III below be discussed during the scheduling conference.

**II.  INITIAL DISCLOSURE - RULE 26(a)(1) and LOCAL RULE 26.2**

This is a breach of contract action brought by SG Cowen against Twin City on a policy of excess insurance issued by Twin City. Twin City has answered the complaint, denying liability, and counterclaimed seeking unspecified damages from SG Cowen. SG

Cowen has served a Reply disputing the allegations in the Counterclaim and seeking its dismissal.

SG Cowen and Twin City each served their initial disclosures required by Rule 26(a)(1) of the Federal Rules of Civil Procedure on September 19, 2005.

### III.  PROPOSED PRE-TRIAL SCHEDULE

The parties disagree over the need for discovery. Twin City believes that the Complaint is subject to dismissal on a motion for judgment on the pleadings and will so move. SG Cowen disagrees with this conclusion, and objects to any stay of discovery while such motion is pending, for the reasons discussed below.

If and when discovery does go forward, the parties agree that in the interest of judicial economy and efficiency, and to spare them perhaps unnecessary expense, a phased approach along the lines discussed in Section III.C. below is sensible and warranted. The parties' suggested approach contemplates a period of discovery on all liability issues, and early motions for summary judgment. If those motions do not fully dispose of the case, the Court can then set deadlines for the completion of the remaining discovery and pre-trial proceedings.

To assist the Court in understanding the rationale for the parties' shared conclusion as to the phasing of pre-trial proceedings, SG Cowen and Twin City have separately set forth their thinking as to why, given the nature of the case, this approach has merit. SG Cowen also explains the basis for its position that there should be no stay of discovery pending the making or determination of the anticipated motion for judgment

on the pleadings to be made by Twin City. Although the parties may disagree as to the characterization of the issues in this case, they do agree that this proposed phasing of discovery, if and when it occurs, would serve the interests of the parties and the Court.

### A.  SG Cowen's Statement Of The Case

This dispute between SG Cowen and its insurer Twin City is an outgrowth of the settlement by SG Cowen of two securities fraud actions, seeking hundreds of millions of dollars in damages, that were previously before this Court: *Baker et al. v. KPMG LLP et al.*, No. 02-CV-10305-PBS and *Roth et al. v. KPMG LLP et al.*, No. 02-CV-10304-PBS (collectively the "Baker Litigation"). In early April 2005, SG Cowen paid the plaintiffs in the Baker Litigation a specified sum to settle all of the claims asserted against SG Cowen (the "Settlement Payment"). The amount of the Settlement Payment is confidential, and the parties intend to orally inform the Court of the figure at the initial scheduling conference on October 5, 2005. There is no dispute, however, as to the reasonableness of the settlement and Twin City consented to the settlement amount.

In this action, SG Cowen is suing Twin City because of its failure to fund its full portion of the Settlement Payment, in accordance with the terms of the excess insurance policy that it issued to SG Cowen (the "Twin City Policy"). Broadly, the Twin City Policy provides insurance of up to $15 million in excess of the total limits of liability (and any self insured retention or deductible) under specified policies of underlying insurance that were issued by various carriers (the "Underlying Insurers") as part of SG Cowen's insurance program. Underlying the Twin City Policy was a primary policy, and

three policies of excess insurance. The Twin City Policy provides that liability under it "shall attach ... after the Primary and Underlying Excess Insurers shall have duly admitted liability and shall have paid the full amount of their respective liability (hereinafter referred to as the 'Underlying Insurance') ...." (Policy, § II A) The Twin City Policy "follows form," generally providing coverage in accordance with the terms and conditions of the Underlying Insurance.

Prior to the settlement, and during the course of the Baker Litigation, SG Cowen had submitted to the first- and second-tier excess insurers invoices for defense costs (legal and other professional fees, and related disbursements) incurred by SG Cowen in defending against the claims in the Baker Litigation (the "Defense Costs"). Those Defense Costs were paid by these two insurers. Twin City never requested that it be permitted to review any of these invoices before they were paid, and never requested that these insurers refuse to pay any of the Defense Costs on the basis that they were supposedly unreasonable.

In late March 2005, when the settlement fund was being put together, an analysis was done in order to determine how much each insurer would contribute to the fund before its policy was exhausted. From this analysis, SG Cowen and Twin City knew the following. Neither the primary insurance policy nor the first-tier excess policy would contribute to the settlement because they were completely exhausted (by payments made in connection with a claim unrelated to the Baker Litigation and, in the case of the first-tier excess carrier, also payment of some of the Defense Costs). Further, only a portion of the second-tier excess policy limits would be available, because that insurer had also

already paid and was then in the process of paying additional Defense Costs. Both the third-tier excess policy and the Twin City policy limits were fully available, since neither insurer had been asked to pay any Defense Costs.

Based upon these facts, Twin City should have contributed $14,355,843.49 as its share of the Settlement Payment, but Twin City refused to do so. Instead, Twin City produced for SG Cowen a recently completed audit (commissioned by Twin City) of the Defense Costs paid by the Underlying Insurers. That audit contended that millions of dollars paid by the Underlying Insurers went for Defense Costs that Twin City did not regard as reasonable nor in compliance with Twin City's Billing Guidelines. Twin City argued that even though the Underlying Insurers had fully paid out the limits of their policies (including payment of these supposedly "unreasonable" Defense Costs), the policies could not be considered exhausted to the extent that payments were made for these Defense Costs challenged by Twin City. SG Cowen disagreed with this contention by Twin City, but was under pressure to fund the Settlement Payment, which was due to be made imminently.

In an effort to resolve this impasse, at least on an interim and partial basis, the parties entered into an Agreement and Conditional Claim Release (the "Agreement and Conditional Release" or "Agreement"). The purpose of the Agreement and Conditional Release was to narrow the area of dispute between the parties, work out some immediate partial payment by Twin City towards the settlement fund, and preserve for SG Cowen the right to later seek to recover from Twin City the additional amount that SG Cowen believed Twin City should have paid to fund the Settlement Payment.

Under the Agreement and Conditional Release, Twin City agreed to advance toward the Settlement Payment, and SG Cowen to accept on a without prejudice (but non-refundable) basis, $7.5 million toward the Settlement Payment. The remaining amount needed to complete the Settlement Payment was advanced by SG Cowen out of its own funds, with SG Cowen reserving in the Agreement the right to seek reimbursement for this amount from Twin City. The parties also generally agreed that they would provide partial releases to each other with respect to the Baker Litigation claim, and limit their future disputes to determining whether Twin City was required to pay more than the $7.5 million, an amount that it was not disputing. For example, by signing the Agreement and Conditional Release, Twin City gave up any claim that the underlying litigation was not covered by the Twin City Policy. For its part, SG Cowen gave up any bad faith claim based upon Twin City's conduct.

The parties therefore carved out of the releases all issues "in any way" relating to their dispute over the reasonableness of the Defense Costs previously paid, and whether those payments could be applied towards exhaustion of the Underlying Insurance. Also carved out of the release was SG Cowen's right to seek from Twin City the payment of any additional legal fees and expenses that it had (recently) incurred in the defense of the Baker Litigation, but which had not yet been submitted for payment to any insurer (the "Recent Defense Costs").

Thus, the Agreement and Conditional Release provides that each party desires to relinquish any claim relating to the Baker Litigation "with the exception of any issues related to or in any way concerning the reasonableness of Defense Costs and other

Claims Expenses incurred in the [Baker] litigation...." (Agreement and Conditional Release, Whereas Clause, pp. 2-3) Paragraph 2 of the Agreement and Conditional Release further provides that each party reserves its respective rights with respect to the "dispute [over] the reasonableness of Defense Costs and other Claims Expenses incurred in the course of the Baker ... litigation," and also reserves SG Cowen's "right to seek full recovery" of additional legal fees and disbursements incurred in the Baker Litigation defense, but which had not been submitted to or paid by the Underlying Insurers (namely, the Recent Defense Costs). (SG Cowen later submitted to Twin City some $100,000 in Recent Defense Costs, which Twin City has accepted for payment. Accordingly, this action does not involve any dispute concerning these Recent Defense Costs.)

SG Cowen contends that the difference between what Twin City should have paid to fund the Settlement Payment ($14,355,843.49) and the amount it did pay ($7.5 million) is $6,855,843.49, which is the amount that SG Cowen seeks to recover in this action, together with interest.

There is no claim by Twin City that any of the payments made by the Underlying Insurers was the product of any collusion or fraud between the insurers or SG Cowen. Nor is there any claim by Twin City that the judgments by the Underlying Insurers as to the reasonableness of the Defense Costs they paid were not made in good faith, based upon the Underlying Insurers' interpretations of their own policies and their own billing guidelines. Nevertheless, according to Twin City, under the terms of its policy, after the case was settled (and the exposure to the Baker Litigation plaintiffs capped), Twin City is entitled to (a) revisit each and every one of the items of Defense Costs previously paid by

-7-

the Underlying Insurers, and (b) make a *de novo* determination whether each item was reasonable and in compliance with Twin City's Billing Guidelines.

SG Cowen disagrees with Twin City's position that it has the contractual right to "second-guess" all of the payments and decisions previously made by the Underlying Insurers. Following discovery, SG Cowen intends to move for summary judgment on this issue. If SG Cowen is successful, then Twin City must pay the $6,855,843.49 that it previously has refused to pay, and the parties will be spared significant unnecessary expense in pre-trial proceedings focusing on the issue of the reasonableness of these Defense Costs.

For this reason, SG Cowen believes that it is reasonable in Phase I of discovery to go forward with all discovery on all issues with one exception. The parties will defer taking any depositions (although not any other discovery) relating to the reasonableness of the Defense Costs until after the ruling on the summary judgment motion dealing with whether Twin City has any right to "second-guess" the judgments and payments made by the Underlying Insurers.

Twin City has stated (see below) that it intends to promptly move for judgment on the pleadings, on the theory that the claim asserted in the Complaint is barred by the Agreement and Conditional Release. Twin City reads the Agreement as precluding any claim against it, except to recover for Defense Costs. Twin City's reading of the Agreement not only takes words out of context, it leads to an absurd result, and would defeat the central purpose of the Agreement. At the time the Agreement was executed, SG Cowen had been paid these Defense Costs now being challenged by Twin City. What

SG Cowen had not been paid, however, is Twin City's full share of the Settlement Payment. The principal purpose of the Agreement was to ensure that SG Cowen preserved the right to sue Twin City to recover that unpaid share of the Settlement Payment if it was necessary to do so. Although the Agreement also preserved SG Cowen's right to recover the Recent Defense Costs from Twin City, that right was only a very small aspect of the parties' agreement -- which had at its core preserving SG Cowen's $6.8 million dollar claim against Twin City for its unpaid share of the Settlement Payment.

To the extent that the Court may feel there is any ambiguity in the terms of the Agreement and Conditional Release, discovery should be taken of the circumstances and the negotiations leading up to that agreement, to eliminate any doubt as the parties' intentions in executing the Agreement and Conditional Release. In that discovery, SG Cowen believes that Christopher Butler, the Hartford Claims Counsel who created the initial draft of the Agreement, and who negotiated its terms on behalf of Twin City, will be forced to admit, and the Hartford and Twin City internal documents will confirm, that both sides understood, at the time the Agreement was being signed, that it was not intended to restrict SG Cowen's right to recover this $6,855,843.49.

Further, and in any event, Twin City's anticipated motion will be made under Rule 12(c). Twin City will therefore have the burden of establishing beyond any doubt that SG Cowen can prove no set of facts upon which SG Cowen can recover from Twin City all or any portion of the $6,855,843.49 that it refused to contribute to the Settlement

Payment. Any such determination cannot be made from the face of the pleadings, and must await discovery and summary judgment motions.

For the foregoing reasons, SG Cowen requests that the Court (a) refuse to grant any stay of discovery pending the decision on any motion for judgment on the pleadings made by Twin City, and (b) whenever discovery begins, permit the parties to stage the pre-trial proceedings so that Phase I will be fact discovery on all issues, but will not include any depositions (but will include any other type of discovery requested) concerning the reasonableness of the Defense Costs. At the conclusion of Phase I, and assuming that Twin City's motion for judgment on the pleadings has been denied, the parties will make their summary judgment motions. Depending upon the outcome of those motions, and if further proceedings are necessary, the Court can set deadlines for the completion of the remaining pre-trial proceedings, including any depositions on reasonableness of the Defense Costs, expert discovery, etc.

### B.   Twin City's Statement of the Case

SG Cowen's Statement of the Case incorrectly describes both the terms of the Release and the allegations of its Complaint. As paragraph 12 of the Complaint establishes, the Complaint only seeks a portion of the settlement amount paid by SG Cowen to settle the underlying Baker Litigation. The Complaint does not seek the payment of SG Cowen's Defense Costs or other Claims Expenses.

SG Cowen's claim asserted in its Complaint is barred by the Release. A true copy of the Release is attached and incorporated into Twin City's Answer. The Release bars

all claims under Twin City's Policy arising out of the Baker Litigation, with the sole exception of SG Cowen's Defense Costs and other Claims Expenses.

SG Cowen's Complaint, however, does not seek to recover Defense Costs or other Claims Expenses. Because the Complaint seeks only reimbursement of a portion of the settlement amount for the Baker Litigation, the claim asserted by the Complaint is barred by the Release as a matter of law.

Twin City will present this issue to the Court through its motion for judgment on the pleadings on or before October 19, 2005. In an effort to forestall the proposed motion for judgment on the pleadings, SG Cowen's Statement of the Case argues that the Release means something different from what it plainly says. By focusing so much attention on Twin City's Motion, rather than the allegations of its own Complaint, SG Cowen admits the strength of Twin City's defense.

Moreover, SG Cowen's Statement of the Case grossly distorts the plain language of the Release. Contrary to SG Cowen's argument, the Release is clear and unambiguous. That SG Cowen and Twin City disagree over the interpretation of that language does not itself create an ambiguity. Twin City's memorandum in support of its motion for judgment on the pleadings will cite the overwhelming precedent on this point.

Although Twin City disputes many of the factual assertions set forth in SG Cowen's Statement of the Case, the Release leaves no room for interpretation, let alone any ambiguity that would justify a factual inquiry. The law in this district is quite clear that an unambiguous and comprehensive release, like this one, must be enforced as drafted without reference to parol evidence. The effect of the Release on SG Cowen's

Complaint, therefore, is a matter of law that should be resolved on a motion for judgment on the pleadings without the need for any discovery. Accordingly, Twin City objects to any discovery unless its motion for judgment on the pleadings is denied.

### C.  Proposed Schedule

SG Cowen requests that there be no stay of discovery pending the determination of Twin City's motion for judgment on the pleadings. Assuming that there is no stay of discovery, SG Cowen requests that Phase I of the pre-trial proceedings be concluded by February 28, 2006. Phase I shall include all fact discovery on all issues, but not include any depositions relating to the reasonableness of any Defense Costs.

SG Cowen also requests that summary judgment motions be made by April 1, 2006.

SG Cowen also requests that if Phase II pre-trial proceedings are needed, the schedule for those proceedings be determined following the decision on summary judgment motions, and in light of the remaining issues.

Twin City proposes that its motion for judgment on the pleadings be made by October 19, 2005, and that discovery be stayed pending the Court's ruling on that motion. Twin City also requests that, if its motion for judgment on the pleadings is denied, the dates for Phase I discovery, and any summary judgment motions be set after such motion is decided.

## IV. MAGISTRATE JUDGE

The parties do not consent to trial by magistrate judge. SG Cowen requests that Magistrate Judge Robert B. Collings, who presided over discovery in the Baker Litigation, be assigned to handle any discovery disputes. Twin City does not object.

## V. SETTLEMENT

On September 27, 2005, pursuant to Local Rule 16.1(C) of the Local Rules of the United States District Court for the District of Massachusetts, SG Cowen presented a written settlement proposal to Defendant, and it is currently awaiting a response.

## VI. LOCAL RULE 16.1(D) (3) CERTIFICATIONS

The parties' Local Rule 16.1(D) (3) Certifications will be filed by the parties under separate cover.

| | |
|---|---|
| Respectfully submitted,<br><br>SG COWEN & CO., LLC,<br>By its attorneys, | Respectfully submitted,<br>TWIN CITY FIRE INSURANCE COMPANY,<br>By its attorneys |
| /s/ Aimée E. Bierman | /s/ Steven D. Morris |
| Wm. Shaw McDermott (BBO #330860)<br>  wmcdermott@klng.com<br>Aimée E. Bierman (BBO #640385)<br>  abierman@klng.com<br><br>KIRKPATRICK & LOCKHART<br>NICHOLSON GRAHAM LLP<br>75 State Street<br>Boston, MA 02109-1808<br>(617) 261-3100<br><br>Gerald A. Novack, Esq. (admitted *pro hac vice*)<br>  gnovack@klng.com<br>Jessica L. Jiménez, Esq. (admitted *pro hac vice*)<br>  jjimenez@klng.com<br><br>KIRKPATRICK & LOCKHART<br>NICHOLSON GRAHAM LLP<br>599 Lexington Avenue<br>New York, NY 10022<br>(212) 536-3900<br><br>Dated:   September 29, 2005 | John D. Hughes (BBO #243660)<br>  jhughes@edwardsangell.com<br>Mary Patricia Cormier (BBO #635756)<br>  mcormier@edwardsangell.com<br>Steven D. Morris (BBO #645093)<br>  smorris@edwardsangell.com<br><br>EDWARDS & ANGELL, LLP<br>101 Federal Street<br>Boston, MA 02110-1800<br>(617) 439-4444 |