UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SG COWEN & CO., LLC, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 05-11106-PBS |
| | ) | |
| v. | ) | |
| | ) | |
| TWIN CITY FIRE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## TWIN CITY FIRE INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER

Defendant Twin City Fire Insurance Company ("Twin City") files this memorandum in support of its motion for a protective order shielding it and third parties from having to produce documents and information beyond the limited discovery permitted by this Court. During the Rule 16 Scheduling Conference and in its subsequent Scheduling Order, this Court appropriately limited discovery at this stage to fact discovery concerning the Release and Breach of Release. Plaintiff SG Cowen & Co., LLC ("SG Cowen") has ignored the Court's Order and served discovery requests well beyond this limited scope. Twin City, therefore, respectfully requests that this Court issue a protective order barring SG Cowen from seeking fact discovery beyond the Release and Breach of the Release by SG Cowen.

### I.    FACTUAL BACKGROUND

The dispute between SG Cowen and Twin City arises out of a settlement by SG Cowen of two securities fraud actions: Baker et al. v. KPMG LLP et al., No. 02-CV-10305-PBS and Roth et al. v. KPMG LLP et al., No. 02-CV-10304-PBS (collectively the "Underlying Litigation"). Twin City, as one of SG Cowen's insurers, funded part of that settlement pursuant

to an Agreement and Conditional Claim Release (the "Release") between the parties. During the negotiation of that Release, however, a dispute arose between Twin City and SG Cowen over certain Defense Costs and Claims Expenses. As a result, Twin City and SG Cowen excluded from the Release any dispute about Defense Costs and Claims Expenses. The Release, however, clearly bars *all* other claims arising out of the Underlying Litigation.

On May 26, 2005, SG Cowen filed its Complaint. In an unusual move, SG Cowen chose not to seek the payment of Defense Costs and other Claims Expenses, which the parties had listed as the "sole exception" to the Release. Instead, as specified in Paragraph 12 of the Complaint, SG Cowen sought a portion of the settlement amount paid by SG Cowen to settle the Underlying Litigation. In its Answer, Twin City stated that this claim is barred by the Release. Twin City also asserted a Counterclaim for Breach of Release.

The Release is clear and unambiguous. It bars all claims arising out of the Underlying Litigation, with the *sole* exception of SG Cowen's Defense Costs and other Claims Expenses. The Release leaves no room for interpretation, let alone any ambiguity that would justify a factual inquiry. Moreover, the Release contains an integration clause stating that "[t]his Agreement sets forth the entire agreement of the Parties and supercedes any prior agreements or understanding between them relating to the Twin City Policy and the Parties are not relying on any statement representation, promise or inducement not expressly set forth herein." See Release, at ¶ 9.

Based on the plain meaning of the Release and the integration clause contained therein, Twin City urged the Court during the Scheduling Conference to stay discovery while the Court considered the scope of the Release. Twin City pointed out that the effect of the Release on SG Cowen's Complaint was a matter of law that should be resolved on a motion for judgment on

the pleadings without the need for discovery. Any discovery on the meaning of the Release would contradict the long standing rule in this district that an unambiguous and comprehensive release, like this one, must be enforced as drafted without reference to parol evidence.

The Court offered SG Cowen an opportunity to amend its Complaint to include claims regarding Defense Costs and Claims Expenses. SG Cowen, however, declined that invitation, choosing to stick with its Complaint, as filed. At the same time, SG Cowen objected to a complete stay on discovery, asking the Court to permit limited discovery. SG Cowen then assured the Court that this discovery would be limited to facts concerning the Release and Breach of the Release.

The Court agreed to this request, but explicitly limited fact discovery to the Release and Breach of the Release (See Scheduling Order, attached as Exhibit A). The Court then set a schedule for summary judgment motions to address the Release issue.

SG Cowen, having backed itself into a corner by refusing to amend its Complaint and faced with the daunting task of disputing the clear and unambiguous terms of the Release, has chosen to ignore the Court's Order limiting discovery. On October 12, 2005, SG Cowen served its First Set of Interrogatories on Twin City (the "Interrogatories"), a true and accurate copy of which is attached hereto as Exhibit B.

Most of these Interrogatories have nothing to do with the Release or Breach of Release. Interrogatories No. 3 through 5 seek information related to the reasonableness of Defense Costs and Claims Expenses. Interrogatory No. 6 seeks information related to the reserves taken by Twin City in connection with the Underlying Action. Interrogatory No. 7 seeks communications between Twin City and its reinsurers concerning, among other things, the Underlying Litigation.

Finally, Interrogatory No. 8 seeks information concerning all facts upon which Twin City based the Affirmative Defenses asserted in its Answer.

That same day, SG Cowen served its First Request for the Production of Documents on Twin City (the "Document Requests"), a true and accurate copy of which is attached hereto as Exhibit C. The Document Requests were even more offensive to the Court's Order than the Requests for Interrogatories. For example, Request No. 1 seeks "all documents that detail, refer or relate to the allegations contained in the Complaint." SG Cowen included similar requests concerning the Answer and Counterclaim. SG Cowen also seeks documents related to the Defense Costs and Claims Expenses which it insisted at the Scheduling Conference were not part of its action. Finally, the Document Requests seek information about Twin City's assessment of the Underlying Litigation (namely its reserves and communications with reinsurers), similar to that sought in the Interrogatories.

## II.    ARGUMENT

### A.    A PROTECTIVE ORDER IS NECESSARY TO PRESERVE THE COURT'S ORDER LIMITING DISCOVERY.

A district court has broad discretion to decide when a protective order is appropriate and what degree of protection is required. See Poliquin v. Garden Way, Inc., 989 F.2d 527, 532 (1st Cir. 1993). A protective order may issue after a showing that good cause exists for the protection of the material sought. See Public Citizens v. Liggett Group, Inc., 858 F.2d 775, 789 (1st Cir. 1988), cert. denied, 488 U.S. 1030 (1989).

As will be shown below, good cause clearly exists for the issuance of a protective order. This Court has already recognized the potential dispositive impact of the Release on SG Cowen's Complaint. When asked by this Court if it intended to amend its Complaint to avoid the Release, SG Cowen responded that it did not. The Court, therefore, correctly limited fact discovery to the

Release and Breach of the Release and set a schedule for filing summary judgment motions on the effect of the Release.

SG Cowen, having painted itself into a corner by refusing to amend its Complaint, must now try to overcome the clear and unambiguous language in the Release. Faced with this impossible task, SG Cowen has decided to ignore the Court's Order and go on a fishing expedition by serving discovery requests that could only be relevant if the Court decides that the Complaint is not barred by the Release.

### B.     THE COURT CORRECTLY LIMITED DISCOVERY TO DOCUMENTS CONCERNING THE RELEASE AND BREACH OF RELEASE

During the Rule 16 Scheduling Conference, this Court recognized – and SG Cowen agreed – that the Release and Breach of Release issues should be resolved first. SG Cowen does not challenge the validity of the Release, nor could it. Absent fraud or duress, the Release is valid. See Sharon v. City of Newton, 437 Mass. 99, 105 (2002) ("There can be no doubt … that under the law of Massachusetts … in the absence of fraud a person may make a valid contract exempting himself from any liability to another …."); see, also Cormier v. Central Massachusetts Chapter of the Nat'l Safety Counsil, 416 Mass. 286, 288 (1993). The threshold question before this Court, therefore, is whether the Complaint as filed is barred by the Release. There is no reason for the parties to expend significant resources on other issues until this dispositive question is resolved.

### C.     THE DOCUMENTS SOUGHT EXCEED THE SCOPE OF DISCOVERY PERMITTED BY THE COURT

The Court left no doubt during the Rule 16 Scheduling Conference and in its October 5, 2005 Order that fact discovery would be "limited to the release, and breach of release." SG Cowen has chosen to completely disregard the Court's Order and request information related

to every allegation and defense alleged in the pleadings. As noted above, both the Interrogatories and Document Requests ask for all facts and documents related to the allegations in the Complaint, Answer and Counterclaim. During a meet and confer between the parties, SG Cowen agreed to limit these requests to the Release and Breach of the Release. The concession meant little, however, because SG Cowen then insisted that the Release and Breach of the Release implicated practically every conceivable category of discovery, including defense costs. It is hard to imagine a more sweeping position or one that is more offensive to the Court's Order limiting discovery.

Equally offensive are the requests for information and documents concerning Twin City's and its reinsurers' assessment of the Underlying Litigation. SG Cowen has asked for information concerning both the reserves taken in connection with the Underlying Litigation and all communications that Twin City had with its reinsurers concerning that litigation. Twin City has agreed to produce any communication with it reinsurers that specifically refers to the Release. Anything else, however, has no bearing on the terms of the Release or Breach of the Release. Instead, that information (as well as any information concerning Twin City's reserves) relates to the underlying settlement, a portion of which SG Cowen claims Twin City must pay. This claim unquestionably is barred by the Release. The information sought, therefore, is only relevant if the Court subsequently decides that the Complaint is not barred by the Release.

In addition, SG Cowen has the audacity to include no less than nine discovery requests related to the reasonableness of Defense Costs and Claims Expenses. Specifically, SG Cowen seeks information and documents concerning Twin City's audit of the Defense Costs and Claims Expenses. The audit was designed to assess the reasonableness of those costs and expenses. Following the meet and confer between the parties, SG Cowen agreed to limit these requests.

BOS_508182_3.DOC/SMORRIS

Nevertheless, SG Cowen continues to insist that Twin City produce information concerning the amount of defense costs paid and outstanding at the time of the Release. SG Cowen also insists that Twin City identify whether it reviewed the reasonableness of those costs.

SG Cowen, however, has admitted in statements to the Court that issues concerning the payment or reasonableness of defense costs are not relevant to its Complaint. Furthermore, SG Cowen has taken the position that Twin City has no right to dispute the reasonableness of those costs and expenses in the first place. See SG Cowen's Statement of the Case, Joint Statement Pursuant to Local Rule 16.1, at 3-10. SG Cowen, however, now seeks extensive discovery on the very same costs and expenses that it insists are irrelevant to its claim.

### D.    THE DISCOVERY ORDERED BY THE COURT IS EXTREMELY LIMITED

It is not surprising that SG Cowen has served such overly broad requests. By refusing to amend its Complaint, SG Cowen now finds itself disputing the clear and unambiguous language of the Release. Having made its bed, SG Cowen is now desperately searching for some fact or circumstance that it can argue contradicts the plain meaning of the Release.

The Release, however, leaves no room for interpretation, let alone any ambiguity that would justify a factual inquiry. Paragraph 3 of the Release plainly states:

> SG ... hereby release[s] and forever discharge[s] Twin City ... from and with respect to any and all manner of action or actions, cause or causes of action of any nature, whether class derivative, or individual in nature, in law or in equity, for indemnity or otherwise, claims, demands, suits, obligations, debts, liens, damages, rights or liability, of any nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent that SG ever had, now has, claims to have or in the future may have, arising from, in connection with or in any way related to the Baker and Bamberg litigation *with the sole exception* of the dispute with Twin City as to the reasonableness of Defense costs and other Claims Expenses ....

> (emphasis added).

Courts have uniformly held that releases containing similar language were unambiguous and enforceable.  See, e.g. Coveney v. President and Trustees of College of the Holy Cross, 388 Mass. 16, 21 (1983) (citing cases); Atlas Tack Corp. v. Crosby, 41 Mass. App. Ct. 429, 434 (1996) (holding that release of all actions that plaintiff "ever had, now has or which it ... shall or may have" was enforceable as to all claims between the parties).

The law in this district is quite clear that an unambiguous and comprehensive release, like this one, must be enforced as drafted without reference to parol evidence.  See Cormier, 416 Mass. at 288 (Massachusetts courts have held that an unambiguous and comprehensive release will be enforced as drafted.); White Constr. Co. v. Commonwealth, 11 Mass.App.Ct. 640, 644, 418 N.E.2d 357 (1981) ("A release ... which is unequivocal in it terms cannot be explained by parol evidence.").  Any attempt by SG Cowen to rewrite the plain meaning of the Release by somehow uncovering alleged factual disputes between the parties, therefore, must fail.

To date, SG Cowen has not alleged any such factual dispute in either its Complaint or Reply.  Instead, SG Cowen relies on assumptions about what it might find and conclusory statements that the Release means something other than what it plainly says.  For example, in its Reply to Counterclaim, SG Cowen asserts without authority that "the Agreement and Release did not in any way extinguish SG Cowen's right to be paid by Twin City that portion of the settlement amount for the Baker and Bamberg litigation that was not paid by the underlying carriers."  See Reply to Counter Claim, at ¶3.  This assertion directly contradicts the broad release granted by SG Cowen in the underlying action.[1]

---

[1]  Nor do SG Cowen's claims fit within the narrow exception set forth in the Release.  Where a release like the one here is broad, courts have held that "[i]f any exclusion from the scope of the release were intended, it would have to be stated."  See White, 11 Mass.App.Ct., at 644 (citing Schuster v. Baskin, 354 Mass. 137, 140, 236 N.E.2d 205 (1968).  The "sole" exception identified in this Release is for Defense Costs and other Claims Expenses.  SG Cowen, however, has already admitted that its Complaint does not seek recovery of Defense Costs or Claims Expenses.  See Plaintiff's Statement of the Case submitted as part of the Joint Statement under Local Rule 16.1.

Apparently, SG Cowen hopes that if it makes its requests broad enough, it will stumble across some shred of fact or circumstance that it might argue raises doubt about the meaning of the Release. As noted above, however, parol evidence cannot be used to contradict the plain meaning of a Release where there is no ambiguity, particularly whereas here there is an integration clause. See, e.g. Cormier, 416 Mass. at 288.

### III.    CONCLUSION

For the foregoing reasons, this Court should grant Twin City's motion for an order that:

(1)    Fact discovery be limited to the Release and Breach of the Release by the SG Cowen; and

(2)    No fact discovery shall be sought regarding:

   (a)    Any defense costs incurred by SG Cowen or any other Twin City insured;

   (b)    Any reserves established by Twin City; and

   (c)    Any communications which Twin City has had with its reinsurers that does not specifically reference the Release.

October 26, 2005                          TWIN CITY FIRE INSURANCE COMPANY,
                                          By its attorneys,


                                          /s/ Steven D. Morris
                                          John D. Hughes (BBO# 243660)
                                          Mary Patricia Cormier (BBO# 635756)
                                          Steven D. Morris (BBO# 645093)
                                          EDWARDS & ANGELL, LLP
                                          101 Federal Street
                                          Boston, MA  02110
                                          (617) 439-4444

BOS_508182_3.DOC/SMORRIS

## CERTIFICATE OF SERVICE

I, Steven D. Morris, hereby certify that on this 26th day of October, 2005, I served a copy of the foregoing document via first class mail, postage prepaid to Wm. Shaw McDermott and Aimee E. Bierman at Kirkpatrick & Lockhart Nicholson Graham LLP, 75 State Street, Boston, MA 02109-1808.

/s/ Steven D. Morris
Steven D. Morris

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE MUTUAL FUNDS INVESTMENT    *
LITIGATION                                      *    MDL 15863
                                                    *
                                                    *****

ORDER

It appearing that my paperless order granting the motion to stay filed by plaintiffs and

defendants Security Brokerage, Inc. was prematurely granted, it is, this 20th day of October 2005

ORDERED that the order granting the motion to stay is rescinded.


/s/_____
J. Frederick Motz
United States District Judge

**EXHIBIT B**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SG COWEN & CO., LLC,<br><br>       Plaintiff,<br><br>  v.<br><br>TWIN CITY FIRE INSURANCE COMPANY,<br><br>      Defendant. | C.A. No. 05-11106 PBS |

## PLAINTIFF SG COWEN & CO., LLC'S
## FIRST SET OF INTERROGATORIES TO
## DEFENDANT TWIN CITY FIRE INSURANCE COMPANY

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff SG Cowen & Co., LLC ("SG Cowen") requests that Defendant Twin City Fire Insurance Company ("Twin City") answer the following interrogatories in accordance with the definitions and instructions set forth below within thirty (30) days after service.

### DEFINITIONS

For the purpose of answering these interrogatories, the following terms are defined as follows:

A. The "Affirmative Defenses" refers to the Second and Third Defenses asserted in Twin City's Answer and Counterclaim.

B. The "Agreement and Conditional Claim Release" refers to the agreement entered into on April 6, 2005, by and between Twin City Fire Insurance Company and Societe Generale.

C. "All Related Documents" means any document that is relevant to, concerns, refers to, relates to, addresses, deals with or reflects the subject matter of this discovery.

D.    The "Answer and Counterclaim" refers to the Answer and Counterclaim filed by Twin City in this action on August 5, 2005.

E.    The "Audit" refers to the audit undertaken by Twin City relating to the defense costs incurred by SG Cowen in connection with the Baker Litigation, the results of which were transmitted in a letter from Christopher Butler to Steven P. Heineman dated March 22, 2005.

F.    The "Baker Claim" refers to the claim made by SG Cowen to Twin City under the Twin City Insurance Policy in connection with defense and indemnification obligations as set forth in the Complaint.

G.    The "Baker Litigation" refers collectively to the various lawsuits filed in this district in which SG Cowen was named as a defendant, including Baker et al. v. KPMG LLP et al., No. 02-CV-10305-PBS, and Roth et al. v. KPMG LLP et al., No. 02-CV-10304-PBS, which alleged various claims against SG Cowen that were covered under the Twin City Insurance Policy.

H.    "Communication" means any writing transmitted between persons or any oral conversation of any kind or character, including, but not limited to, personal conversations, telephone conversations, letters, meetings, memoranda, telegraphic, telex, computer and facsimile communications or transmittal of documents, and all documents concerning such writings and oral conversations. "Communication" as used herein specifically includes internal writings, oral conversations or meetings among officers, board members, employees or other representatives of Twin City, as well as writings, oral conversations or meetings between and among Twin City and another other insurance company or governmental agency.

I.    The "Complaint" refers to Plaintiff's Complaint filed in this action on May 26, 2005 with the United States District Court for the District of Massachusetts, C.A. No. 05-11106.

J.    "Document" and "Documents" mean all materials within the full scope of Fed. R. Civ. P. 34.

(1)    The term "document" shall include, without limitation, any writing, whether handwritten, printed, typed or otherwise made, of any kind of nature, however produced or reproduced, including drafts thereof, and including copies bearing notations or marks not found on the original.

(2)    This definition shall further include, without limitation, agreements, letters, correspondence, memoranda, e-mail, notes, analyses, appraisals, valuations, reports, studies, bills, statements, work papers, books, records, journals, ledgers, logs, messages of any nature (including reports, notes, notations, and memoranda of or relating to telephone conversations and conferences), agenda, minutes, or transcripts or tapes of communications or meetings, desk calendars, appointment books, diaries, lists, questionnaires, surveys, tapes or other recordings from which information can be obtained.

(3)    This definition shall further include every copy of each document which is not an exact duplicate of the documents which are produced, every copy which has any writing, figure, or notation, annotation or the like; draft(s), attachment(s) to or enclosure(s) with any document; and any document referred to in any document.

(4)    This definition shall include documents stored, maintained or transmitted as electronic data.

K.     "Electronic data" includes writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means, and means the original, or identical duplicate when the original is not available, and any non-identical copies, whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind.  Electronic data includes, but is not limited to, activity listings of electronic mail recipients and/or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs, and outlines, electronic mail, any and all items stored on electronic media, including, but not limited to, computer memories, hard disks, floppy disks, CD-ROMs and removable medial.  Electronic data also includes the file, folder tabs and/or container and labels appended to, or associated with any physical storage devised associated with each original and/or copy.

L.     "Person" or "Person(s)" mean natural persons, corporation, partnership, unincorporated association, government, government agency or other entity.

M.     "Plaintiff" and "SG Cowen" mean Plaintiff SG Cowen & Co., LLC, its agents, assigns, affiliates, attorneys, employees, parents or subsidiaries.

N.     The term "relating to" means concerning, referring to, alluding to, responding to, in connection with, commenting on, in response to, about, announcing, explaining, discussing, showing, embodying, studying, reflecting, analyzing, constituting or regarding in anyway, directly or indirectly, to the subject matter of the request.

O.     "Twin City" means The Hartford, Twin City Fire Insurance Company, and all of its corporate subgroups, parent corporations, assignees, agents, legal representatives, trustees,

directors, officers, employees, predecessors, and successors in interest, subsidiaries, affiliates, and divisions.

P.    "Twin City Insurance Policy" means the Excess Financial Products Insurance Policy, policy number NDF0130761-00, effective from 12:01 a.m. standard time on July 15, 2000 to 12:01 a.m. standard time on July 1, 2002.

Q.    "You," "Your," and "Twin City" mean Defendant Twin City Fire Insurance Company, and all of its corporate subgroups, parent corporations, assignees, agents, legal representatives, trustees, directors, officers, employees, predecessors, and successors in interest, subsidiaries, affiliates, and divisions.

## INSTRUCTIONS

1.    "Describe in detail" shall mean to set forth the substance of any fact, action, occurrence, conduct, communication, or event concerning the item in question.

2.    "Identify," "identity," or "identification" when used in reference to a firm, partnership, incorporated or unincorporated, or other legal or commercial entity means to state:

(a)    its name; and

(b)    its present and last known address

3.    "Identify," "identity," or "identification" with respect to a document shall require the following information be provided for each such document:

(a)    the general character of the document, such as, for example, a letter, memorandum, report, contract, etc.

(b)    the date of the document and its identification by signature, addressee, author and whether it is an original or reproduced copy;

(c)    A summary of the subject matter of the document;

(d)    The present whereabouts of the document, or copy thereof, and the name and address of the custodian thereof; and

- 5 -

(e)     The date of the document, or a copy thereof, was received by or came to the attention of the respondent or any of its officers, employees, member companies, agents and representatives.

4.     "Identify," "identity," or "identification" with respect to a natural person means to state:

(a)     the person's full name;

(b)     present and last known home address and telephone number;

(c)     present and last known business address and telephone number;

(d)     occupation;

(e)     job title;

(f)     job description;

(g)     age;

(h)     the person's condition of health, if known;

(i)     the person's years of employment, if known; and

(j)     any present or former relationship to any of the parties to this action.

5.     For each oral communication identified or referred to in the answers to these interrogatories, provide the following information:

(a)     who was present;

(b)     the date thereof;

(c)     how the communication took place (i.e. whether the communication was person to person, by telephone, etc.);

(d)     where the communication occurred;

(e)     the substance of what each party to the conversation said; and

(f)     whether any document exist which sets forth, summarizes, refers to, or relates to the substance of the communication.

6.     In answering the interrogatories, furnish all information that is known or available to you regardless of whether this information is possessed directly by you, or by your agents,

- 6 -

employees, representatives, or other persons acting or appearing to act on your behalf and, unless privileged, by your attorneys.

7.    If you assert that an interrogatory is objectionable, state your objection clearly and specifically identify which parts of the interrogatory, or if the response it requires, are objectionable and why.

8.    If you assert that an interrogatory is objectionable, respond to those remaining parts of the interrogatory to which you do not object.

9.    If you chose to respond to an interrogatory by producing documents, clearly identify to which interrogatory and subparagraph the documents are responsive.

10.    If you cannot answer any portion of any of the following interrogatories in full, after exercising due diligence to secure the information to do so, state as such and answer to the extent possible, specifying the reasons for your inability to answer the remainder, and stating whatever information or knowledge you have concerning the unanswered portions. If you know of any person who is or may be knowledgeable about any portion of the interrogatory that you cannot answer completely, please identify that individual.

11.    If you claim a privilege as a ground for failing to answer any interrogatory, respond to that part of each such interrogatory that does not call for allegedly privileged information and communications. For each interrogatory, or portion thereof, as to which you claim a privilege, describe the factual basis for your claim of privilege in sufficient detail to permit adjudication of the validity of that claim, including, but not limited to the following:

(a)    a brief description of the type of information, document or communication;

(b)    The date of the information, document, or communication;

(c)    The name, title and job description of the transmitter of the information, document or communication;

- 7 -

(d)     The name, title, and job description of the person to whom the information, document or communication was addressed;

(e)     The name, title and job description of each person who has received or utilized the information, document or communication;

(f)     A brief description of the subject matter of the information, document or communication;

(g)     The nature of the privilege claimed; and

(h)     Each and every fact upon which you rely to support the claim of privilege

12.     Words in the singular shall include the plural, and vice versa, and any interrogatory propounded in the disjunctive shall also be read as if propounded in the conjunctive and vice versa.

13.     These interrogatories are deemed to be continuing so as to require the filing of supplemental responses in the event that you (including your counsel) locate additional information not identified in your answers or discover that information given in your answers is erroneous.

## INTERROGATORIES

### INTERROGATORY NO. 1

Please state the name, social security number, occupation and title, current business address, professional training and experience of all persons who provided information to respond to these interrogatories and identify the corresponding interrogatory for which each person provided information.

### INTERROGATORY NO. 2

Identify each of your employees, whether currently or formerly employed by you, who was involved in any way in the drafting, negotiation or execution of the Agreement and Conditional Claim Release and identify all documents relating thereto.

### INTERROGATORY NO. 3

Describe all facts relating to the commencement, undertaking and conclusion of your Audit of SG Cowen's legal expenses incurred in connection with the Baker Litigation, and identify all documents relating thereto.

### INTERROGATORY NO. 4

Please identify all individuals or persons who have had responsibility for conducting your Audit of SG Cowen's legal expenses incurred in connection with the Baker Litigation, provide their social security number, occupation and title, and current or last known business and home addresses, identify all of the documents that they have generated in producing said Audit as well as the date, persons involved in and content of each communication they have had concerning or relating to said Audit.

### INTERROGATORY NO. 5

Identify any audits you have conducted, other than the Audit referenced in Interrogatory No. 4, of SG Cowen's legal expenses incurred in connection with the Baker Litigation, identify all of the documents that have been generated in producing such audits as well as the date, persons involved in and content of each communication concerning or relating to said audits.

### INTERROGATORY NO. 6

If you have established any reserves for the Baker Claim or Baker Litigation, describe in detail all facts relating to such reserves, including, but not limited to, the amount of such reserves, the specific claims for which the reserves have been established, the identity of all persons who have knowledge relating to such reserves and a description of all documents relating to such reserves.

## INTERROGATORY NO. 7

Describe in detail all facts relating to each communication that you have had with your reinsurers regarding the Baker Litigation and/or the Agreement and Conditional Claim Release, including, but not limited to, the identity of each person with whom you communicated, the date of each such communication, and the substance of each such communication, including, but not limited to, what you said or stated in each such communication and what each reinsurer said or stated in each such communication, and identify all documents relating thereto.

## INTERROGATORY NO. 8

For each Affirmative Defense set forth in your Answer and Counterclaim to the Plaintiff's Complaint, identify all facts upon which you rely in asserting each Affirmative Defense including documents and oral communications upon which you rely and identify all oral communications and documents relating thereto.

Respectfully submitted,

Wm. Shaw McDermott (BBO #330860)
smcdermott@klng.com
Aimée E. Bierman (BBO #640385)
abierman@klng.com
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
75 State Street
Boston, MA 02109-1808
(617) 261-3100

Gerald A. Novack, Esq.
gnovack@klng.com
Jessica L. Jiménez, Esq.
jjimenez@klng.com
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
599 Lexington Ave.
New York, NY 10022
(212) 536-3900

Dated: October 12, 2005

## Certificate of Service

I, Jessica L. Jiménez, hereby certify that on October 12, 2005, I caused a true and correct copy of the foregoing PLAINTIFF SG COWEN & CO., LLC'S FIRST SET OF INTERROGATORIES TO DEFENDANT TWIN CITY FIRE INSURANCE COMPANY to be served by electronic mail and first class mail upon the following:

> John D. Hughes
>   jhughes@edwardsangell.com
> Mary Patricia Cormier
>   mcormier@edwardsangell.com
> Steven D. Morris
>   smorris@edwardsangell.com
>
> EDWARDS & ANGELL, LLP
> 101 Federal Street
> Boston, MA  02110-1800

Dated:  October 12, 2005

Jessica L. Jiménez

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SG COWEN & CO., LLC, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-11106 PBS |
| | ) | |
| TWIN CITY FIRE INSURANCE COMPANY, | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF SG COWEN & CO., LLC'S
## FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS TO
## DEFENDANT TWIN CITY FIRE INSURANCE COMPANY

Plaintiff SG Cowen & Co., LLC. ("Plaintiff" or "SG Cowen") hereby, pursuant to Rule 34 of the Federal Rules of Civil Procedure, requests that Twin City Fire Insurance Company ("Defendant" or "Twin City") produce all of the items described below in its possession, custody or control. All documents and other tangible things responsive hereto should be produced for inspection and photocopying at the offices of Kirkpatrick & Lockhart Nicholson Graham LLP, 599 Lexington Avenue, New York, NY 10022 within thirty (30) days from the date of this Request.

The following definitions and instructions are an integral part of these Requests and should be taken into account in responding to them.

NY-392910 v1 0808285-0902

## DEFINITIONS

A.     The "Affirmative Defenses" refers to the Second and Third Defenses asserted in Twin City's Answer and Counterclaim.

B.     The "Agreement and Conditional Claim Release" refers to the agreement entered into on April 6, 2005, by and between Twin City Fire Insurance Company and Societe Generale.

C.     "All Related Documents" means any document that is relevant to, concerns, refers to, relates to, addresses, deals with or reflects the subject matter of this discovery.

D.     The "Answer and Counterclaim" refers to the Answer and Counterclaim filed by Twin City in this action on August 5, 2005.

E.     The "Audit" refers to the audit undertaken by Twin City relating to the defense costs incurred by SG Cowen in connection with the Baker Litigation, the results of which were transmitted in a letter from Christopher Butler to Steven P. Heineman dated March 22, 2005.

F.     The "Baker Claim" refers to the claim made by SG Cowen to Twin City under the Twin City Insurance Policy in connection with defense and indemnification obligations as set forth in the Complaint.

G.     The "Baker Litigation" refers collectively to the various lawsuits filed in this district in which SG Cowen was named as a defendant, including Baker et al. v. KPMG LLP et al., No. 02-CV-10305-PBS, and Roth et al. v. KPMG LLP et al., No. 02-CV-10304-PBS, which alleged various claims against SG Cowen that were covered under the Twin City Insurance Policy.

H.     "Communication" means any writing transmitted between persons or any oral conversation of any kind or character, including, but not limited to, personal conversations, telephone conversations, letters, meetings, memoranda, telegraphic, telex, computer and

-2-

facsimile communications or transmittal of documents, and all documents concerning such writings and oral conversations. "Communication" as used herein specifically includes internal writings, oral conversations or meetings among officers, board members, employees or other representatives of Twin City, as well as writings, oral conversations or meetings between and among Twin City and another other insurance company or governmental agency.

I.    The "Complaint" refers to Plaintiff's Complaint filed in this action on May 26, 2005 with the United States District Court for the District of Massachusetts, C.A. No. 05-11106.

J.    "Document" and "Documents" mean all materials within the full scope of Fed. R. Civ. P. 34.

    1.    The term "document" shall include, without limitation, any writing, whether handwritten, printed, typed or otherwise made, of any kind of nature, however produced or reproduced, including drafts thereof, and including copies bearing notations or marks not found on the original.

    2.    This definition shall further include, without limitation, agreements, letters, correspondence, memoranda, e-mail, notes, analyses, appraisals, valuations, reports, studies, bills, statements, work papers, books, records, journals, ledgers, logs, messages of any nature (including reports, notes, notations, and memoranda of or relating to telephone conversations and conferences), agenda, minutes, or transcripts or tapes of communications or meetings, desk calendars, appointment books, diaries, lists, questionnaires, surveys, tapes or other recordings from which information can be obtained.

    3.    This definition shall further include every copy of each document which is not an exact duplicate of the documents which are produced, every copy which has any writing, figure, or notation, annotation or the like; draft(s), attachment(s) to or enclosure(s) with any document; and any document referred to in any document.

    4.    This definition shall include documents stored, maintained or transmitted as electronic data.

K.    "Electronic data" includes writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means, and means the original, or identical duplicate when the original is not available, and any non-identical copies,

whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind. Electronic data includes, but is not limited to, activity listings of electronic mail recipients and/or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs, and outlines, electronic mail, any and all items stored on electronic media, including, but not limited to, computer memories, hard disks, floppy disks, CD-ROMs and removable medial. Electronic data also includes the file, folder tabs and/or container and labels appended to, or associated with any physical storage devised associated with each original and/or copy.

L.      "Person" or "Person(s)" mean natural persons, corporation, partnership, unincorporated association, government, government agency or other entity.

M.      "Plaintiff" and "SG Cowen" mean Plaintiff SG Cowen & Co., LLC, its agents, assigns, affiliates, attorneys, employees, parents or subsidiaries.

N.      The term "relating to" means concerning, referring to, alluding to, responding to, in connection with, commenting on, in response to, about, announcing, explaining, discussing, showing, embodying, studying, reflecting, analyzing, constituting or regarding in anyway, directly or indirectly, to the subject matter of the request.

O.      "Twin City" means The Hartford, Twin City Fire Insurance Company, and all of its corporate subgroups, parent corporations, assignees, agents, legal representatives, trustees, directors, officers, employees, predecessors, and successors in interest, subsidiaries, affiliates, and divisions.

P.      "Twin City Insurance Policy" means the Excess Financial Products Insurance Policy, policy number NDF0130761-00, effective from 12:01 a.m. standard time on July 15, 2000 to 12:01 a.m. standard time on July 1, 2002.

Q.      "You," "Your," and "Twin City" mean Defendant Twin City Fire Insurance Company, and all of its corporate subgroups, parent corporations, assignees, agents, legal representatives, trustees, directors, officers, employees, predecessors, and successors in interest, subsidiaries, affiliates, and divisions.

## INSTRUCTIONS

1.      In producing documents and other materials in response to this Document Request, you are requested to furnish all documents in your possession, custody, or control, regardless of whether such documents are possessed directly by you or your partners, agents, employees, representatives, subsidiaries, affiliates or investigators, or by your attorneys or their agents, employees or investigators.

2.      Please produce each document in response to this Document Request in its entirety, without deletion or excision, regardless of whether you consider the entire document to be relevant or responsive. If any requested document cannot be produced in full, please produce it to the extent possible, indicating which document or portion of that document, is being withheld and the reason that document or portion is being withheld.

3.      If you object to any document request herein on the ground that it is overly broad, please produce documents in response to the request as narrowed to conform to your objection within the period allowed for a response and state in your response: (1) how you narrowed the request, and (2) the reason why you claim the request is overly broad.

4.      With respect to any document responsive to any request that is withheld from production or redacted based upon any claim of privilege, please produce a privilege log compliant with Rule 26(b)(5) of the Federal Rules of Civil Procedure.

5.      If no documents responsive to a particular document request exist or are within your possession, custody, or control, please so state in your response to this Document Request.

6.      These document requests shall be construed as continuing in nature.  If you discover, obtain possession of, or create additional responsive documents at any time between the time of your initial response to this Document Request and the date of trial, please produce such additional documents promptly.

## DOCUMENT REQUESTS

1.      All documents that detail, refer or relate to the allegations contained in the Complaint.

2.      All documents that detail, refer or relate to the allegations contained in the Answer and Counterclaim.

3.      All documents that detail, refer, relate to, discuss, constitute or support the facts underpinning the allegations contained in the Affirmative Defenses.

4.      All documents that comprise, detail, refer or relate to the Agreement and Conditional Claim Release.

5.      All documents reflecting any communications between you and SG Cowen regarding the Agreement and Conditional Claim Release.

6.      All documents reflecting any communications between you and anyone regarding the Agreement and Conditional Claim Release.

7.   All documents that detail, refer or relate to the Audit.

8.   All documents reflecting any communications between you and SG Cowen regarding the Audit.

9.   All documents reflecting any communications between you and anyone regarding the Audit.

10.  All documents that detail, refer or relate to any audits of SG Cowen's legal expenses incurred in connection with the Baker Litigation other than the Audit defined in paragraph E supra.

11.  All documents reflecting any communications between you and SG Cowen regarding any audits of SG Cowen's legal expenses incurred in connection with the Baker Litigation, other than the Audit defined in paragraph E, supra.

12.  All documents reflecting any communications between you and anyone regarding any audits of SG Cowen's legal expenses incurred in connection with the Baker Litigation, other than the Audit defined in paragraph E, supra.

13.  All communications reflecting any communications between you and your reinsurers regarding the Baker Claim or the Baker Litigation.

14.  All documents reflecting any communications between you and your reinsurers regarding the level of reserves to be maintained by you to cover any losses or liabilities arising from the Baker Claim or the Baker Litigation.

15.  All documents that relate to the determination of the level of reserves to be maintained by you to cover any losses or liabilities arising from the Baker Claim or the Baker Litigation.

16.    All documents relating to your past and present document retention/destruction

       policy(ies).


                                        Respectfully submitted,


                                        Wm. Shaw McDermott (BBO #330860)
                                         smcdermott@klng.com
                                        Aimée E. Bierman (BBO #640385)
                                         abierman@klng.com
                                        KIRKPATRICK & LOCKHART
                                        NICHOLSON GRAHAM LLP
                                        75 State Street
                                        Boston, MA  02109-1808
                                        (617) 261-3100

                                        Gerald A. Novack, Esq.
                                         gnovack@klng.com
                                        Jessica L. Jiménez, Esq.
                                         jjimenez@klng.com
                                        KIRKPATRICK & LOCKHART
                                        NICHOLSON GRAHAM LLP
                                        599 Lexington Ave.
                                        New York, NY 10022
                                        (212) 536-3900


Dated:  October 12, 2005

## Certificate of Service

I, Jessica L. Jiménez, hereby certify that on October 12, 2005, I caused a true and correct copy of the foregoing PLAINTIFF SG COWEN & CO., LLC'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS TO DEFENDANT TWIN CITY FIRE INSURANCE COMPANY to be served by electronic mail and first class mail upon the following:

> John D. Hughes
>   jhughes@edwardsangell.com
> Mary Patricia Cormier
>   mcormier@edwardsangell.com
> Steven D. Morris
>   smorris@edwardsangell.com
>
> EDWARDS & ANGELL, LLP
> 101 Federal Street
> Boston, MA 02110-1800

Dated: October 12, 2005

_____
Jessica L. Jiménez