## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SG COWEN & CO., LLC,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>TWIN CITY FIRE INSURANCE<br>COMPANY,<br><br>　　　　　　　Defendant. | ) ) ) ) ) ) ) ) ) | C.A. No. 05-11106 PBS |

### MEMORANDUM OF SG COWEN & CO., LLC
### IN OPPOSITION TO MOTION FOR PROTECTIVE ORDER

Plaintiff SG Cowen & Co., LLC ("SG Cowen") respectfully submits this memorandum in opposition to the motion by Defendant Twin City Fire Insurance Company ("Twin City") for a protective order. SG Cowen requests that the Court instead enter an order compelling Twin City to provide the disclosure requested by SG Cowen. SG Cowen also requests, pursuant to Rules 26(c) and 37(a)(4)(A) of the Federal Rules of Civil Procedure, that it be awarded its reasonable attorney's fees and expenses incurred in opposing Twin City's motion. As shown below, there is no justification for the objections to disclosure lodged by Twin City, much less the "substantial justification" required to avoid such an award under Rule 37(a)(4)(A). The facts set out in this memorandum are based upon the statements made in the Declaration of Gerald A. Novack, executed November 9, 2005, together with the exhibits thereto (the "Novack Declaration").

## **Twin City's Refusal To Abide By The Court's Prior Ruling**

Twin City seeks to block SG Cowen from taking discovery that Judge Saris explicitly authorized at the Rule 16 scheduling conference in this case, held on October 5, 2005. In doing so, Twin City makes the very same arguments that the Court previously rejected at the conference.

In this action, SG Cowen sues to recover some $6.85 million from Twin City under the policy of excess insurance that it issued to SG Cowen. This sum is the additional amount that Twin City should have paid towards the April 2005 settlement of certain litigation that had been brought against SG Cowen. At the time the settlement was to be funded, the parties had a dispute as to how much Twin City was required to pay. Twin City's position was that the amount it was otherwise required to pay had to be reduced, dollar-for-dollar, to the extent that any of the underlying insurers had made payments for what Twin City considered to be unreasonable defense costs. Had those payments not been made, Twin City contended, the underlying insurers would have been able to use those amounts toward the settlement, thus reducing Twin City's share.

In order to facilitate the settlement, SG Cowen and Twin City agreed that each would fund a specified portion of it, and would reserve for a later determination the exact amount of Twin City's share. This understanding was reflected in an Agreement and Conditional Claim Release, executed by the parties on April 6, 2005 (the "Release"). A copy of the Release is Exhibit A to the Novack Declaration.

2

At the Rule 16 scheduling conference, Twin City argued that all discovery should be stayed until the Court ruled upon a motion for judgment on the pleadings that Twin City anticipated making. The basis for Twin City's motion was to be its contention that the Release constituted a complete bar to this action as a matter of law. According to Twin City, the Release is clear and unambiguous, and clearly extinguishes all of SG Cowen's claims against Twin City in connection with the settled litigation, with one exception. That exception is the right to seek recovery from Twin City of a relatively small amount of defense costs that were incurred in the late stages of the underlying litigation (and have now been paid). Therefore, argued Twin City, since SG Cowen's complaint does not seek to recover any defense costs, but rather this portion of the settlement amount, the claim in the Complaint is barred by the Release and must be dismissed.

SG Cowen disputed Twin City's reading of the Release, and opposed this stay of discovery, explaining that Twin City's reading of the Release was not only unjustified by its language, but also directly at odds with the parties' intentions when they executed it. The central purpose of the Release was to allow for a partial payment toward the settlement by Twin City, while at the same time preserving to each side the right to argue whether Twin City should have paid more towards the settlement.

Further, counsel for SG Cowen predicted to the Court that SG Cowen's interpretation of the Release would be confirmed by evidence as to the circumstances in which the Release was executed. In particular, the deposition testimony of Christopher

3

Butler, the Twin City representative who negotiated on Twin City's behalf and drafted most of the language of the Release, would (if truthful) establish beyond any doubt that Twin City's current reading of the Release is a recent invention and being asserted in bad faith.

The Court rejected Twin City's request for a complete stay of discovery, and ordered that limited discovery could proceed, restricted to issues relating to the circumstances in which the Release was negotiated and executed, and its meaning and intended effect. Among other things, the Court observed that the parties' course of conduct was sometimes relevant and enlightening on the meaning of language in an agreement. The Court gave the parties some four months, until January 31, 2006, to engage in this discovery. Motions for summary judgment relating to the Release issue were to be made by February 28, 2006. (A copy of the Scheduling Order is annexed as Exhibit C to the Novack Declaration.)

At the conference, Twin City's counsel requested reassurance that its participation in this discovery would not be taken as a waiver of its contention that no parol evidence was admissible. The Court so acknowledged. This exchange makes it abundantly clear that Twin City understood that Judge Saris was specifically ordering that discovery of parol evidence relating to the meaning of the Release could go ahead.

In the face of this explicit ruling, Twin City has now sought a protective order based on the very ground that was rejected by the Court at the scheduling

4

conference. Once again Twin City makes the blanket argument that SG Cowen's

discovery requests must be denied because they are directed at obtaining parol evidence:

> The law in this district is quite clear that an unambiguous and
> comprehensive release, like this one, must be enforced as drafted
> without reference to parol evidence. ... Any attempt by SG Cowen
> to rewrite the plain meaning of the Release by somehow uncovering
> factual disputes between the parties, therefore, must fail. (Twin City
> Memo of Law, p. 8)

Twin City's reiteration of the very same argument that was rejected by the

Court at the Rule 16 conference reflects an utter disregard for the Court's prior ruling,

can in no way be justified and should be summarily rejected.

Twin City's recitation of the governing legal principles is incomplete.

"'The parol evidence rule does not preclude consideration of background facts that

explain the context in which the agreement was made.'" Davis v. Dawson, 15 F. Supp.

2d 64, 108 (D. Mass. 1998) (quotation is from Report and Recommendation of

Magistrate Judge Bowler, whose "well-reasoned report" was adopted by Judge Saris).

An agreement is examined and construed "with reference to all of its language and to its

general structure and purpose and in light of the circumstances under which it was

executed." Cofman v. Acton Corporation, 958 F.2d 494, 498 (1st Cir. 1992).

Further, a "'court may consider parol and extrinsic evidence for the very

purpose of deciding whether the documentary expression of the contract is ambiguous'"

and if it is determined to be so, "then the court may consider extrinsic evidence to

ascertain the parties' intent" and such extrinsic evidence may, among other things,

include the parties' negotiations and their course of dealing. <u>Davis v. Dawson, supra</u>, 15 F. Supp. 2d at 108.

Here, at the Rule 16 conference Judge Saris specifically declined to make a ruling on the issue whether the Release was ambiguous, and instead directed that discovery go forward with respect to the issues relating to the Release. The Court's anticipation was that any rulings as to whether the Release was ambiguous and its meaning would come as part of the parties' summary judgment motions at the conclusion of discovery on the Release issues. The protective order now sought by Twin City seeks to thwart that approach.

Accordingly, the Court should reject Twin City's request for a broad ruling that there may be no discovery by SG Cowen (including the deposition of Butler scheduled for November 28, 2005) of the circumstances leading up to the execution of the Release, the parties' understanding and their course of conduct.

### Relevance Of The Discovery Sought

Twin City has also argued that the specific information now sought by SG Cowen in its pending discovery requests is irrelevant to any issue relating to the Release. This contention is fatuous, as will become quickly apparent from a review of the facts below. This review sets out in some detail the parties' differing interpretations of the Release, and the circumstances in which it was executed, in order to understand the relevance and significance of the information now sought to be discovered.

This lawsuit is an outgrowth of the settlement by SG Cowen of two securities fraud actions, seeking hundreds of millions of dollars in damages, that were previously before this Court: Baker et al. v. KPMG LLP et al., No. 02-CV-10305-PBS and Roth et al. v. KPMG LLP et al., No. 02-CV-10304-PBS (collectively the "Baker Litigation"). In early April 2005, SG Cowen paid the Baker Litigation plaintiffs a specified sum (the amount of which is confidential) to settle all of the claims asserted against SG Cowen (the "Settlement Payment"). As previously mentioned, Twin City refused to fund its full portion of the Settlement Payment, in accordance with the terms of the excess insurance policy that it issued to SG Cowen (the "Twin City Policy"). The Twin City Policy provides insurance of up to $15 million in excess of the total limits of liability under specified policies of underlying insurance (the "Underlying Insurance") issued by various carriers (the "Underlying Insurers") as part of SG Cowen's insurance program.

During the course of the Baker Litigation, SG Cowen had submitted to the Underlying Insurers invoices for defense costs (legal and other professional fees, and related disbursements) incurred by SG Cowen in defending against the claims in the Baker Litigation. Those defense costs were paid by the Underlying Insurers. Twin City was never asked to pay any of them.

When the time came for the settlement, the amounts available from the Underlying Insurers' policies were insufficient to fund the entire payment, triggering the Twin City Policy. As its share of the settlement payment, Twin City should have paid

7

approximately $14.35 million. Twin City balked, however, contending that the

Underlying Insurers had paid defense costs that Twin City did not consider to be

reasonable. If these allegedly unreasonable defense costs had not been paid, reasoned

Twin City, the Underlying Insurers would have contributed more funds to the settlement,

with the result that Twin City's share of the Settlement Payment would have been less.

To support this contention, Twin City delivered to SG Cowen an "Audit" that Twin City

had commissioned of the defense costs for invoices submitted through January 2005.

That Audit challenged as unreasonable approximately $5.4 million of defense costs paid

by the Underlying Insurers.

SG Cowen did not believe that Twin City had any right to second-guess

these defense costs paid by the Underlying Insurers, and also disagreed that any of these

defense costs were unreasonable. In short, SG Cowen disputed Twin City's ultimate

conclusion that it had any basis for refusing to pay its full share of the Settlement

Payment.

For a time, this dispute over the reasonableness of these defense costs (and

thus the correct amount owed by Twin City as its share of the settlement) left the parties

at an impasse. With the settlement payment date fast approaching, Christopher Butler,

who was then an inside Claims Counsel for The Hartford (Twin City is a member of The

Hartford group of companies) proposed a solution. Twin City would then pay towards

the settlement a certain amount that it did not dispute as owing. SG Cowen would

advance the balance of the funds required for the settlement, and the parties would

reserve for a later date a resolution of their dispute as to whether Twin City was required

to pay more towards the settlement.

Butler's proposal is reflected in a March 10, 2005 email he wrote to defense

counsel for SG Cowen in the Baker Litigation.  The email provides, in pertinent part, as

follows:

> We do not object to the idea of making a direct payment to the
> plaintiffs .... [T]he amount that we will **contribute to the
> settlement** is still not certain. ... With respect to the **funding of the
> settlement** we would propose that Twin City funds a certain amount
> that could be considered undisputed, with [SG Cowen] advancing
> the remainder **until such time as we have reached an agreement
> on a final amount.** (Emphasis added)

(A copy of this email is annexed as Exhibit D to the Novack Declaration.)

This email makes it clear that the parties' dispute was over the amount that

Twin City would contribute to the settlement, and not whether Twin City would pay any

defense costs to SG Cowen (those defense costs already having been paid by the

Underlying Insurers and the $100,000 in recently-incurred defense costs not yet having

been submitted).  The email also shows that Twin City's payment of this "undisputed"

amount was not to be a resolution of the dispute, but rather only an interim measure, with

SG Cowen reserving its right to seek the balance it claimed to be due.

This approach was acceptable to SG Cowen, and Butler thereafter prepared

a draft of the document that would, with some modification, ultimately become the

Release, and which he forwarded by email to SG Cowen's counsel on March 24, 2005.

(A copy of this email and this initial draft of the Release is annexed as Exhibit E to the Novack Declaration.)

This initial draft Release stated that the undisputed amount that Twin City agreed to pay towards the settlement was $7.5 million, and that SG Cowen would advance approximately $7.4 million of its own funds to complete the Settlement Payment.[*] The draft Release further made plain that while the parties intended to generally relinquish claims relating to the Baker Litigation, this waiver did not include their rights relating to the dispute arising out of Twin City's argument that it was entitled to a dollar-for-dollar reduction in the amount that it had to pay for the settlement, to the extent that Twin City could demonstrate that the Underlying Insurers had paid defense costs that Twin City considered to be unreasonable.

Thus, the Release referred to the parties' desire to waive their mutual rights connected with the Baker Litigation:

> **with the exception of any issues related to or in any way concerning the reasonableness of Defense Costs** and other Claims Expenses incurred in the [Baker] litigation.  (Third Whereas Clause, p. 2 of Release) (Emphasis added)

Similarly, paragraph 2 of the draft further provided that:

> Twin City and SG Cowen agree that **each party reserves its respective rights to dispute the reasonableness of Defense Costs** and other Claims Expenses incurred in the course of the [Baker]

---

[*] At the time, the parties were not certain of the exact amount that Twin City should have contributed, and estimated it to be this $7.4 million.  After the Release was executed, it was determined that the additional amount that Twin City should have paid was approximately $6.85 million, the amount sought in this action.

> litigation and no payment by Twin City or SG Cowen toward
> funding the settlement … will prejudice the rights of either party.
> (Release, p. 3) (Emphasis added)

As previously mentioned, the only controversy between the parties at the time was over the amount that Twin City should have to pay towards the settlement. Although, perhaps inartful, Butler's reference to the "dispute" over the "reasonableness of Defense Costs" was understood by all concerned to be a shorthand reference to this dispute over the amount of the settlement payment, which in turn hinged on the dispute relating to the reasonableness of the defense costs paid.

No other reading as to what this "dispute" refers to makes any sense. SG Cowen had no need to reserve any right to "dispute" the Defense Costs because its position was that they were reasonable and not disputable. What SG Cowen was reserving, as Twin City knew, was the right to dispute Twin City's contention that it could reduce its share of the settlement payment because these defense costs were allegedly unreasonable.

After receiving the Butler draft, counsel for SG Cowen basically agreed with it, but insisted upon one substantive change, which was to explicitly add a further reservation of SG Cowen's rights, namely the right to seek recovery from Twin City of the recently-incurred attorney's fees not paid by the Underlying Insurers. The initial draft of the Release did not clearly spell out that SG Cowen was preserving this right. Since the Underlying Insurance was exhausted, these recently-incurred defense costs would

ultimately have to be submitted to Twin City for payment. (They were later submitted and paid.)

Butler agreed with this suggestion. Making only minor modifications to the language suggested by SG Cowen's counsel, Butler amended the draft Release to reflect the reservation of this second right. The language added by Butler is found in various places in the Release, but the revision of paragraph 2 of the Release is illustrative of the nature of the change.

To make the language added by Butler more readily apparent to the Court, we have italicized it. As executed, paragraph 2 of the Release reads, in pertinent part, as follows:

> Twin City and SG agree that each party reserves its respective rights to dispute the reasonableness of Defense Costs and other Claims Expenses incurred in the course of the Baker and Bamberg litigation, *and SG reserves its right to seek full recovery of the Defense Costs and other Claims Expenses* and no payment by Twin City or SG toward funding the settlement … will prejudice the rights of either party.

Twin City reads the italicized language as wiping out the prior reservation, that existed in the initial draft, of SG Cowen's right to seek the $7.4 million it anticipated advancing to fund the settlement. Put another way, Twin City reads the Release as though it states that Cowen "*only* reserves [the] right to seek full recovery of the Defense Costs and other Claims Expenses." Of course, the word "and," not "only," appears before the newly-added language, reinforcing the understanding that this new language was adding an additional right, not eliminating an already existing one.

12

Although Twin City has never expressly acknowledged it in its papers, the natural consequence of its reading is that SG Cowen released the right to recover this $6.85 million representing the unpaid portion of the settlement amount since, in Twin City's view, SG Cowen can only sue for defense costs, and all of the defense costs have been paid.

## The Discovery Now Sought By SG Cowen

The discovery that SG Cowen now seeks is intended to confirm its reading of the Release and demonstrate the unreasonableness of Twin City's interpretation. The correct reading of the Release is that it reserves two different claims to SG Cowen. One is SG Cowen's right to sue Twin City for the balance of its full share of the settlement. The other right reserved was to seek recovery from Twin City of the recently-incurred defense costs of some $100,000.

SG Cowen's outstanding discovery requests are directed at obtaining evidence as to how Butler and Twin City acted when the Release was executed, since that will reflect their contemporaneous understanding. This course of conduct evidence is clearly relevant to the interpretation of the Release.

Twin City's contention that the evidence sought is neither admissible nor relevant to any issue relating to the Release is patently frivolous. First, there is no requirement that information sought to be discovered be admissible, so long as it may lead to the discovery of relevant evidence. See Fed.R.Civ.P. 26(b)(1).

Second, and in any event, the information sought, which we describe below, is manifestly relevant to the issues relating to the Release.

As a threshold matter, we note that Twin City has made various arguments about some of the requests being overbroad as drafted. Those arguments are not relevant to this motion, because in the "meet and confer" SG Cowen narrowed its requests. (Annexed as Exhibit B to the Novack Declaration is the October 25, 2005 letter to Twin City's counsel formally narrowing the discovery requests.) Accordingly, the analysis that follows deals with these voluntarily narrowed requests.

To facilitate the Court's review, SG Cowen has prepared a chart that lists each of the Interrogatory and Document Requests, and indicates whether the request has been voluntarily withdrawn or narrowed, and whether it is still objected to by Twin City, despite the narrowing. (This chart is Exhibit F to the Novack Declaration.)

**Twin City's reserves and reinsurer communications.** Under Twin City's reading, with the execution of the Release its potential liability on the Baker Claim dropped to approximately $100,000 (the amount of the recently-incurred defense costs). SG Cowen contends that, under the Release, Twin City still had additional exposure of approximately $7.4 million for its share of the settlement. If Butler had negotiated a release of this $7.4 million claim by SG Cowen, it would be a tremendous financial result for Butler personally and Twin City, all without having had to "fire a shot" in any coverage litigation with SG Cowen.

14

The elimination of this $7.4 million exposure would certainly be relevant to how much Twin City continued to reserve on the Baker Claim after the Release was executed. If there was no change in the amount of the reserve following the execution of the Release, it would support SG Cowen's interpretation that the Release did not affect SG Cowen's right to sue for Twin City's full share of the settlement.

Similarly, if the exposure on the Baker Claim had been reduced to about $100,000 with the execution of the Release, it would have been natural for Twin City to so notify its reinsurers. If that were not done, it would be additional evidence in favor of SG Cowen's interpretation of the Release. Accordingly, SG Cowen has requested discovery as to any communications between Twin City and its reinsurers, at about the time of the Release and thereafter.

As narrowed, SG Cowen seeks discovery as to: (1) what Twin City's reserves were before the settlement of the Baker Litigation was consented to; (2) what Twin City's reserves were in the interim period between the approval of the settlement of the Baker Litigation and the execution of the Release; (3) what Twin City's reserves were after the Release was executed; and (4) any communications with the reinsurers that refer to the status of the Baker claim following the execution of the Release. (See Novack Declaration, Exhibits B and F)

**The Audit.** Evidence as to the Audit that Twin City had obtained before the Release was executed would also shed light on the credibility of any testimony by

Butler or others at The Hartford as to what the parties understood and intended when executing the Release.

The Audit that Twin City presented to SG Cowen before the Release was executed purported to challenge approximately $5.4 million of defense costs, not the $7.4 million that was then estimated to be due from Twin City. This meant that under Twin City's own rationale, at that time (as now) it had no justification for holding back anything more than $5.4 million. Yet Twin City was, under the terms of the Release, forcing SG Cowen to advance $7.4 million (later determined to be only $6.85), some $2 million more than even Twin City could justify.

Under Twin City's reading of the Release, SG Cowen would have been acting inexplicably and irrationally by agreeing to forever give up any claim to this $2 million. In contrast, under SG Cowen's reading, its actions were entirely understandable, since it reserved the right to sue for the unpaid portion of the settlement, including this $2 million. In evaluating what the parties understood, these background facts would obviously be illuminating.

SG Cowen's request, as narrowed, is limited to: (1) what defense costs had already been paid and what remained to be paid at the time the Release was signed; and (2) what defense costs Twin City had not yet looked at and knew were pending or about to be submitted at the time of the Release. (See Novack Declaration, Exhibits B and F)

## Conclusion

For the foregoing reasons, SG Cowen requests that: (a) the motion for a protective order be denied in its entirely; (b) Twin City be compelled to provide the discovery now requested; and (c) directed not to refuse further discovery, by way of deposition or otherwise, as to evidence relating to the circumstances leading up to execution of the Release, the parties' understanding and their course of conduct.

SG Cowen also requests that it be awarded its reasonable attorney's fees and expenses incurred in connection with this motion. Twin City's reassertion of its previously-rejected contention that no discovery as to extrinsic or parol evidence should be allowed flies in the face of the Court's recent ruling rejecting that very contention, as well as being contrary to settled law. Further, Twin City's arguments that the specific information that SG Cowen now seeks to obtain is not at all relevant to any issue relating to the meaning of the Release, nor even calculated to lead to the discovery of admissible evidence, are equally meritless. Since Twin City lacked "substantial justification" for its request for: (a) a broad order barring future discovery (by way of depositions or otherwise) of extrinsic or parol evidence; and (2) a protective order against the specific disclosure now requested by SG Cowen in its Interrogatories and Document Requests, an award of reasonable attorney's fees and expenses should be given.

## Oral Argument Requested

Pursuant to Local Rule 7.1(D), SG Cowen requests oral argument.

17

November 9, 2005

Respectfully submitted,

/s/ Aimée E. Bierman
Wm. Shaw McDermott (BBO #330860)
 smcdermott@klng.com
Aimée E. Bierman (BBO #640385)
 abierman@klng.com
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
75 State Street
Boston, MA 02109-1808
(617) 261-3100

Gerald A. Novack, Esq.
 gnovack@klng.com
Jessica L. Jiménez, Esq.
 jjimenez@klng.com
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
599 Lexington Ave.
New York, NY 10022
(212) 536-3900

## CERTIFICATE OF SERVICE

I, Jessica L. Jiménez, hereby certify that on November 9, 2005 I caused a true and correct copy of the foregoing MEMORANDUM OF SG COWEN & CO., LLC IN OPPOSITION TO MOTION FOR PROTECTIVE ORDER and DECLARATION OF GERALD A. NOVACK to be served by first class mail upon the following:

John D. Hughes
Mary Patricia Cormier
Steven D. Morris
EDWARDS & ANGELL, LLP
101 Federal Street
Boston, MA  02110-1800

Dated:  November 9, 2005

Jessica L. Jiménez

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

----------------------------------------------------------X
                                     :

**SG COWEN & CO., LLC,**          :

                    :    **Civil Action No. 05-11106-PBS**

              **Plaintiff,**    :

                    :

    **-against-**            :

                    :    **DECLARATION OF**

**TWIN CITY FIRE INSURANCE**  :    <u>**GERALD A. NOVACK, ESQ.**</u>

**COMPANY,**                  :

                    :

              **Defendant.**   :

                    :
----------------------------------------------------------X

Gerald A. Novack, hereby states as follows:

1.    I am a member of the firm of Kirkpatrick & Lockhart Nicholson Graham LLP, attorneys for the Plaintiff SG Cowen & Co., LLC ("SG Cowen"). I respectfully submit this Declaration in opposition to the motion by Defendant Twin City Fire Insurance Company ("Twin City") for a protective order barring discovery of extrinsic or parol evidence relating to an Agreement and Conditional Claim Release entered into between SG Cowen and Twin City on April 6, 2005 (the "Release"). A copy of the Release is annexed hereto as Exhibit A.

NY-398044 v1

## The Nature Of This Dispute

2.      In this action, SG Cowen is suing Twin City on its excess insurance policy to recover approximately $6.85 million. SG Cowen contends that Twin City wrongly refused to pay this amount towards the April 2005 settlement of two securities fraud actions brought against SG Cowen. Twin City did contribute $7.5 million towards the settlement, but refused to pay this additional $6.85 million required to fund the settlement.

3.      At the time of the settlement, Twin City contended that the insurance policies underlying it were improperly and prematurely exhausted by the payment of defense costs that Twin City viewed as unreasonable. Therefore, Twin City argued, it was entitled to a dollar-for-dollar reduction – equivalent to the amount of any unreasonable defense costs paid – in the amount it was required to pay towards the settlement. To support this claim, Twin City delivered to SG Cowen a defense cost "Audit" that Twin City had commissioned. The Audit, however, only identified some $5.4 million in allegedly unreasonable defense costs.

4.      Thus, at the time of the settlement – even under Twin City's theory – it only had justification for withholding some $5.4 million. Nevertheless, Twin City withheld $6.85 million and has continued to withhold this amount (some $1.5 million more than its own Audit purported to justify) to this day.

5.      Because Twin City was unwilling to then pay what SG Cowen viewed as Twin City's full share of the settlement, SG Cowen was required to advance the

2

resulting shortfall. The principal purpose of the Release, SG Cowen contends, was to enable the parties to each make their respective payments towards the settlement without prejudice to either side's arguments on the issue of whether Twin City should have paid more toward the settlement.

6.    The other purpose of the Release, SG Cowen contends, was to preserve its right to obtain reimbursement from Twin City for a relatively small amount of recently-incurred defense costs. Under its policy, Twin City was also obligated to reimburse SG Cowen for reasonable defense costs incurred. At the time of the settlement, these recently-incurred defense costs amounted to approximately $100,000, and had not been submitted to the underlying insurers for payment because their policies were exhausted. Those recently-incurred defense costs were submitted to Twin City some time after the settlement and have been paid. Accordingly, the only remaining dispute between the parties relates to whether Twin City was required to pay this additional $6.85 million towards the settlement.

## The Rule 16 Conference

7.    In its Answer, Twin City has alleged that the Release bars SG Cowen's claim to recover this $6.85 million. Based on this, at the Rule 16 scheduling conference held before Judge Saris on October 5, 2005, Twin City's counsel requested that all discovery be stayed until the Court ruled upon a motion for judgment on the pleadings that Twin City anticipated making.

3

8.    Twin City's counsel argued that the Release is clear and unambiguous, and extinguished all SG Cowen coverage claims against Twin City in connection with the underlying litigation, with one exception. That sole exception according to Twin City, was the right to seek recovery from Twin City of defense costs. Therefore, argued Twin City, since SG Cowen's complaint does not seek to recover any defense costs, but rather $6.85 million owed towards the settlement, the Complaint must be dismissed. Further, Twin City's counsel contended, the bringing of this action constituted a violation of the terms of the Release, entitling Twin City to damages.

9.    Twin City's counsel specifically requested that the Court stay any discovery until after there was a ruling on Twin City's contemplated motion to dismiss, arguing that no discovery was warranted because the Release was clear on its face and extrinsic or parol evidence as to the meaning and effect of the Release would be inadmissible in any event.

10.    SG Cowen's counsel opposed the requested stay of discovery, explaining that Twin City's reading of the Release was not only unjustified by its language, but also directly at odds with the principal purpose of the agreement, which was to leave for another day each side's right to argue whether Twin City

4

was required to pay an additional $7.4 million (later determined to be only $6.85 million) towards the settlement. *

11.    Counsel for SG Cowen also predicted that its interpretation of the Release would be confirmed by evidence as to the circumstances in which the Release was executed. In particular, the deposition testimony of Christopher Butler, who negotiated the Release on Twin City's behalf and drafted most of the language of the Release, would (if truthful) establish beyond any doubt that Twin City's current reading of the Release is a recent invention and being asserted in bad faith.

12.    After hearing argument, the Court rejected Twin City's request for a complete stay of discovery, and ordered that limited discovery could proceed. That discovery was to be restricted to issues relating to the circumstances in which the Release was negotiated and executed, and its meaning and intended effect. Among other things, in explaining its ruling, the Court observed that extrinsic or parol evidence as to the parties' course of conduct was sometimes relevant and enlightening as to the meaning of language in an agreement. (In addition, the Court ruled that discovery could take place on Twin City's claim that SG Cowen's bringing of this action constituted a breach of the Release.)

---

*      At the time, the parties were not certain of the exact amount that Twin City should have contributed, and estimated it to be $7.4 million (as indicated in the Release (¶ 1)). After the Release was executed, it was determined that the additional amount that Twin City should have paid was approximately $6.85 million, the amount sought in this action.

13.     The Court gave the parties some four months, until January 31, 2006, to engage in this discovery. Motions for summary judgment relating to the Release issues were to be made by February 28, 2006. If Twin City's Release defense were not accepted, then the parties could proceed to discovery, if needed, with respect to the merits of the underlying dispute as to whether Twin City was required to pay this additional $6.85 million.

14.     At the conference, Twin City's counsel requested reassurance that its participation in this discovery would not be taken as a waiver of its contention that no extrinsic or parol evidence was admissible. The Court so acknowledged. This exchange makes it abundantly clear that Twin City understood that Judge Saris was specifically ordering that discovery of parol evidence relating to the meaning of the Release could go ahead.

## Scope Of The Discovery Sought

15.     After SG Cowen served its discovery requests, and encountered objections by Twin City, the parties held a "meet and confer." This led to SG Cowen agreeing to hold certain requests in abeyance and narrowing others. By letter dated October 25, 2005, SG Cowen confirmed that the discovery it is currently seeking was limited to three narrow areas. A copy of the October 25, 2005 letter is annexed hereto as Exhibit B.

6

## **Additional Exhibits**

16.    The memorandum submitted by SG Cowen in connection with this motion makes reference to several other exhibits to this Declaration, which are described below:

Exhibit C:    Scheduling Order, dated October 5, 2005

Exhibit D:    March 10, 2005 email from Christopher Butler to defense counsel for SG Cowen

Exhibit E:    March 24, 2005 email from Christopher Butler to defense counsel for SG Cowen enclosing initial draft of Release

Exhibit F:    Chart showing current status of discovery requests by SG Cowen

I declare, under penalty of perjury pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.  Executed on November 9, 2005.

Gerald A. Novack, Esq.

7

# EXHIBIT A

## AGREEMENT AND CONDITIONAL CLAIM RELEASE

This Agreement and Conditional Claim Release is entered into by and between Twin City Fire Insurance Company ("Twin City) and Societe Generale ("SG").  The Agreement and Conditional Claim Release shall become effective when fully executed.

WHEREAS, Twin City insured SG pursuant to an Excess Financial Products Insurance Policy No. NDF0130761 (the "Twin City Policy") which, subject to and in accordance with all of its terms and conditions, provides certain coverage in excess of a Primary Policy issued by Lloyd's, Policy No. 509/QA500298 and Excess Policies issued by National Union Fire Insurance Company of Pittsburg PA, Policy No. 861-76-44 (the "National Union Policy"), Gulf Insurance Group, Policy No. GA0280251 (the "Gulf Policy") and Executive Risk Indemnity, Inc., Policy No. 152-12902-98 (the "Executive Risk Policy"), (collectively the "Underlying Excess Policies")

WHEREAS, the Twin City Policy, follows form to and provides or limits coverage pursuant to all of the terms and conditions of the Primary Policy and the Underlying Excess Policies, unless otherwise excluded, modified or limited by the terms and conditions of the Twin City Policy;

WHEREAS, the Twin City Policy affords an aggregate limit of liability of $15 million excess of the aggregate limit of liability of $55 million provided by the Primary Policy and Underlying Excess Policies which is excess of SG's self insured retention of $2.5 million;

WHEREAS, SG has sought coverage under the Twin City Policy, the Primary Policy and the Underlying Excess Policies in connection with claims asserted against SG Cowen & Co., LLC (f/k/a SG Cowen Securities Corporation) ("SG Cowen") in an action brought by Janet Baker, James Baker, JKBaker LLC, a Delaware limited liability company, and JMBaker LLC, a

APR. -07' 05 (THU) 06:56     SG LEGAL          Document 22-3      Filed 11/09/2005      Page 3 of 29     P. 003
Case 1:05-cv-11106-PBS                                        TED:212 278 7035

04/06/2005  18:18     2122778945              HFP CLAIMS D&O #1                      PAGE  03/08

Delaware limited liability company (collectively "Bakers") styled Baker et al. v. KPMG LLP et al., No. 02-CV-10305-PBS pending in the District Court for the District of Massachusetts, and an action brought by Robert Roth, Paul Bamberg, and Donald B. Fletcher, Jr., as Trustees of the Paul G. Bamberg Trust, and Cherry F. Bamberg and Donald Fletcher, Jr., as Trustees of the Cherry F. Bamberg Trust (the "Bambergs") styled Roth et al. v. KPMG LLP et al., No. 02-CV-10304-PBS pending in the District Court for the District of Massachusetts, which actions (collectively the "Actions") were consolidated, alleging claims, *inter alia*, against SG Cowen based on a variety of legal theories, including but not limited to fraud and negligence, and asserting rights to recover damages against SG Cowen (hereinafter referred to as the "Baker and Bamberg litigation");

WHEREAS, SG contends that Twin City is obligated to provide coverage under the Twin City Policy for the claims asserted in the Baker and Bamberg litigation and Defense Costs and other Claims Expenses incurred therein

WHEREAS, Twin City and SG dispute whether coverage is available under the Twin City policy, in whole or in part, for the claims alleged in the Baker and Bamberg litigation and Twin City and SG disputes the reasonableness of the Defense Costs and other Claims Expenses incurred therein;

WHEREAS, in return for the payment and receipt of good and valuable consideration, Twin City and SG desire to compromise, settle, waive and relinquish all possible demands, claims or rights which they may have including but not limited to any and all demands, claims or rights arising in any manner from, or connected in any manner with the Baker and Bamberg litigation, with the exception of any issues related to or in any way concerning the

2

reasonableness of Defense Costs and other Claims Expenses incurred in the Baker and Bamberg litigation, subject to the terms and conditions of this agreement;

NOW, THEREFORE, in consideration of the mutual covenants set forth and payments provided for herein, and other good and valuable consideration the receipt and adequacy of which is hereby acknowledged, and in accordance with the foregoing recitals it is hereby stipulated and agreed by and between Twin City on the one hand, and the SG on the other hand, as follows:

1.   Twin City shall make a payment in the amount of Seven Million Five Hundred Thousand Dollars ($7,500,000.) (the "Settlement Payment") toward the funding of the settlement of the Baker and Bamberg litigation pursuant to the terms of the Settlement Agreement entered into between SG Cowen and the plaintiffs in the Baker and Bamberg litigation. SG Cowen will make a payment in the amount of Seven Million Four Hundred Twenty Nine Thousand Five Hundred Ninety Dollars ($7,429,590.) toward the funding of the settlement of the Baker and Bamberg litigation.

2.   Twin City and SG agree that each party reserves its respective rights to dispute the reasonableness of Defense Costs and other Claims Expenses incurred in the course of the Baker and Bamberg litigation, and SG reserves its right to seek full recovery of the Defense Costs and other Claims Expenses and no payment by Twin City or SG toward funding the settlement of the Baker and Bamberg litigation will prejudice the rights of either party. In no event shall Twin City pay more than a total of $15 million toward the funding of the settlement and reimbursement of Defense Costs and other Claims Expenses, collectively.

3

3.    In consideration of the agreement by Twin City described above, as well as any additional consideration, the receipt and adequacy of which is hereby acknowledged, SG, on its own behalf and on behalf of its past, present or future trustees, agents, heirs, executors, administrators, assigns, partners, principals and all persons or entities claiming through any of the foregoing, hereby release and forever discharge Twin City and all of its past, present or future trustees, agents, employees, attorneys, companies, divisions, affiliates, subsidiaries, predecessors, successors, heirs, executors, administrators, owners, assigns, directors, partners, principals, officers, employees, insurers and reinsurers, and representatives of any of them, and all persons acting by, through, under or in concert with, or any of it, from and with respect to any and all manner of action or actions, cause or causes of action of any nature, whether class derivative, or individual in nature, in law or in equity, for indemnity or otherwise, claims, demands, suits, obligations, debts, liens, damages, losses, attorneys' fees, costs, contracts, agreements, promises, controversies, judgments and demands, rights or liabilities, of any nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent that SG ever had, now has, claims to have or in the future may have, arising from, in connection with or in any way related to the Baker and Bamberg litigation with the sole exception of the dispute with Twin City as to the reasonableness of Defense costs and other Claims Expenses, and SG's right to seek full recovery of the Defense Costs and other Claims Expenses referred to in paragraph 2 above.

4.    In consideration of and subject to the mutual promises, representations, warranties and undertakings set forth herein Twin City, on its own behalf and on behalf of all of its past, present or future trustees, agents, employees, attorneys, companies, divisions, affiliates, subsidiaries, predecessors, successors, heirs, executors, administrators, owners, assigns,

4

directors, partners, principals, officers, employees, insurers and reinsurers, and representatives of any of them, and all persons acting by, through, under or in concert with, hereby releases and forever discharges SG and all of its past, present or future trustees, agents, heirs, executors, administrators, assigns, partners, principals and all persons claiming through any of the foregoing, from and with respect to any and all manner of action or actions, cause or causes of action of any nature, whether class derivative, or individual in nature, in law or in equity, for indemnity or otherwise, claims, demands, suits, obligations, debts, liens, damages, losses, attorneys' fees, costs, contracts, agreements, promises, controversies, judgments and demands, rights or liabilities, of any nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent that Twin City ever had, now has, claims to have or in the future may have, arising from, in connection with or in any way related to the claims asserted in the Baker and Bamberg litigation with the sole exception of the dispute with SG as to the reasonableness of Defense costs and other Claims Expenses, and SG's right to seek full recovery of the Defense Costs and other Claims Expenses referred to in paragraph 2 above.

5.     SG acknowledges, represents and warrants that it has not assigned, sold, transferred, or otherwise disposed of any of the causes of action, claims or other matters, which are being released hereby. If, contrary to this representation and warranty, SG assigns or has assigned such rights to any other person or entity, then SG shall defend, indemnify and hold harmless the other Party with respect to any claim or action brought by any assignee of any interest assigned contrary to this representation and warranty.

6.     This Agreement is effective upon execution by Twin City and SG; provided, however, that in the event the Settlement of the Baker and Bamberg litigation is not finally consummated for any reason, then (a) this Agreement shall be void *ab initio*; neither this

Agreement, nor any negotiations, proceedings, or conversations had or statements made in connection with this Agreement, shall be used or referred to by any of the Parties hereto in any manner or for any purpose; and the Parties shall otherwise be restored to their respective positions immediately prior to the execution and delivery of this Agreement.

7.     This Agreement and Conditional Release is entered into to facilitate the funding of the settlement of the Baker and Bamberg litigation, and neither the execution of, nor the performance of any of the terms of this Agreement shall constitute or be construed as an admission by Twin City or SG of any liability or of the existence of insurance coverage, or of any fact or indication that any claim of any Party against any other Party has any merit.

8.     Each of the Parties and/or their counsel has reviewed this Agreement and understands the releases, representations and all other matters set forth herein and any dispute about the meaning of any part of this Agreement shall be construed as if the Agreement were jointly drafted.

9.     This Agreement sets forth the entire agreement of the Parties and supercedes any prior agreements or understandings between them relating to the Twin City Policy and the Parties are not relying on any statement, representation, promise or inducement not expressly set forth herein.

10.     This Agreement may be amended or modified only by a written instrument signed by the Parties.

11.     This Agreement may be executed in one or more counterparts, and in both original form and one or more photocopies, each of which shall be deemed an original, but all of which together shall be deemed to constitute one and the same instrument.

6

IN WITNESS THEREOF, the Parties have caused their signatures to be affixed hereto on

the dates set forth below.


SOCIETE GENERALE

By: _____

Title: ___MANAGING Director-GENERAL COUNSEL___


TWIN CITY FIRE INSURANCE COMPANY

By: _____
      Christoph J. Butts

Title: _Assistant Vic. President - HFP_


Q:\D&O Claims\Butler\SGcowenconditionalrelease.2nd revised.doc

7

# EXHIBIT B

**Kirkpatrick & Lockhart Nicholson Graham LLP**

75 State Street
Boston, MA  02109-1808
617.261.3100
Fax 617.261.3175
www.klng.com

October 25, 2005

Aimée E. Bierman

617.261.3166
Fax: 617.261.3175
abierman@klng.com

**By Facsimile and First-Class Mail**

Steven D. Morris, Esq.
Edwards & Angell, LLP
101 Federal Street
Boston, MA  02110

Re:   <u>SG Cowen & Co., LLC v. Twin City Fire Insurance Company</u>

Dear Steven:

I am writing regarding our meet and confer of yesterday afternoon.  As per our conversation, you have contested the discoverability of the information and/or documents sought in Interrogatories Nos. 3-8 and Document Requests 1-3 and 7-15.[1]

You have taken the untenable position, <u>inter alia</u>, that the information and documents sought in these interrogatories and requests should not be provided or produced because such information would constitute parol evidence and it is inadmissible because interpretation of the Release solely involves questions of law.

During our scheduling conference on October 3, 2005, Judge Saris expressly stated that the parties could take discovery regarding the proper interpretation of the Release, and such evidence is by definition outside the four corners of the Release.  Thus, it is frivolous for you to resist discovery on the grounds you have given.

Further, this is to confirm that, for present purposes, SG Cowen is willing to narrow its Interrogatories and Requests as follows:

> **Interrogatory Nos. 3-5; Document Request Nos. 7-12**:  These requests and interrogatories focus on any audits of SG Cowen's legal expenses incurred in connection with the Baker Litigation.  We do not seek details of the audit.  Rather, as I explained during our meet and confer, we seek discovery of your client's understanding of (1) what defense costs had already been paid and what remained to be paid. at the time the Release was signed, and (2) what defense costs Twin City had not yet looked at and knew were pending or about to be submitted at the time of the Release.

---

[1]  As noted during our conference call, SG Cowen has agreed to hold Document Request Nos. 1-3 in abeyance at this point.

BOS-909005 v1 0808285-0901



**Kirkpatrick & Lockhart Nicholson Graham LLP**

Steven D. Morris, Esq.
October 25, 2005
Page 2

**Interrogatory Nos. 6-7; Document Request Nos. 13-15**: These requests and interrogatories seek information and documents regarding Twin City's reinsurance and reserves vis-à-vis the Baker Claim. You indicated that you would consider limiting Document Request No. 13 to communications between Twin City and its reinsurers regarding the Release (as opposed to communications regarding the Baker Claim or the Baker Litigation) and that you would consider the question of whether you would produce communications subsequent to the execution of the Release.

While SG Cowen maintains the reasonableness of these Interrogatories and Document Requests, for present purposes, SG Cowen is willing to accept documentation reflecting: (1) what Twin City's reserves were before the Settlement was consented to, (2) what Twin City's reserves were in the interim period between the approval of the settlement of the Baker Litigation and the execution of the Release, and (3) what Twin City's reserves were after the Release was executed. Further, we would insist upon discovery of any communications with the reinsurers that refer to the status of the Baker claim following the execution of the Release.

Please be advised that if you seek a protective order barring discovery of these requests, SG Cowen intends to seek any and all costs, including attorney's fees, incurred in opposing such a frivolous and spurious motion.

Thank you for your attention to this matter.

Sincerely,

Aimée E. Bierman

AEB:gmf

cc:    Mary Patricia Cormier, Esq.
       John D. Hughes, Esq.
       Wm. Shaw McDermott, Esq.
       Gerald A. Novack, Esq.
       Jessica L. Jiménez, Esq.

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SG Cowen & Co., LLC
Plaintiff,

V.

Twin City Fire Insurance Co.
Defendant.

Civil Action Number
05-11106-PBS

October 5, 2005

SCHEDULING ORDER

Saris, D.J.,

Fact Discovery deadline: 1/31/06 (limited to the release, and breach of release)

Summary Judgment Motion filing deadline: 2/28/06

Opposition to Summary Judgment Motions: 3/31/06

Hearing on Summary Judgment or Pretrial Conference: 4/12/06 at 2:00 p.m.

By the Court,

/s/ Robert C. Alba
Deputy Clerk

# EXHIBIT D

>>> "Butler, Chris (HFP, Claims)" <Chris.Butler@thehartford.com> 03/10/05 8:40 AM >>>
Peter:

We do not object to the idea of making a direct payment to the plaintiffs
rather than using an escrow agent. However, as the top layer that will be
contributing to the settlement we are in a different position from the other
carriers. Our audit of the legal fees on this matter is continuing and we
are still seeking information regarding policy erosion from prior claims, so
the amount that we will contribute to the settlement is still not certain.
Similarly, we will need to execute a separate release with our insured when
all of these issues have been resolved. Such a release will have to reflect
the unique issues between Twin City and our insured. With respect to the
funding of the settlement we would propose that Twin City funds a certain
amount that could be considered undisputed, with Societe Generale advancing
the remainder until such time as we have reached an agreement on a final
amount. Please advise as to the amount that you believe Twin City should be
funding so that we may compare this to our internal records. Feel free to
contact me if you have any questions.

Regards,

Christopher J. Butler, Esq.
Claims Consultant
Hartford Financial Products
2 Park Avenue
New York, NY 10016
212-277-0476
chris.butler@thehartford.com

----Original Message----
From: Peter Morrison [mailto:PMORRISO@skadden.com]
Sent: Wednesday, March 09, 2005 11:12 AM
To: john.favilla@aig.com; karen.parker@aig.com; lammt@chubb.com;
mfurman@kbmv.com; pdeebilka@ipgk.com; rkoenig@stpaultravelers.com;
chris.butler@thehartford.com
Cc: Jonathan Frank
Subject: SG Cowen / Baker and Bamberg Settlement

Dear Carriers:
This morning, plaintiffs' counsel suggested an alternative concerning
the timing of paying out the settlement amounts. Rather than fund an
escrow account five days after the settlement papers are executed,
plaintiffs' counsel suggested that the carriers wire the settlement
amounts directly to the plaintiffs (or their counsel) five days after
the court enters a final judgment and order dismissing SG Cowen from the
case with prejudice. The alternative suggestion avoids the need to use
an escrow agent altogether. Please note that plaintiffs' counsel still
needs to receive authority from the plaintiffs approving the suggested
alternative, but, in the meantime, we would like to know your position

concerning this alternative suggestion. Please respond as soon as possible. If we do not hear from you by end of business Thursday, we intend to use whichever approach plaintiffs prefer.
Regards,
Peter Morrison

Peter B. Morrison
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036
Tel:  (212) 735-2677
Fax:  (917) 777-2677

----------------------------------------------------------------------------

--

****************************************************

This e-mail and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any e-mail, and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
****************************************************

==================================================================================

==

****************************************************************

PRIVILEGED AND CONFIDENTIAL: This communication, including attachments, is for the exclusive use of addressee and may contain proprietary, confidential and/or privileged information. If you are not the intended recipient, any use, copying, disclosure, dissemination or distribution is strictly prohibited. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this communication and destroy all copies.
****************************************************************

CC:          Cohen, Julie;  Miller, Rory

# EXHIBIT E

Please review and give me any comments. thanks.

>>> "Butler, Chris (HFP, Claims)" <Chris.Butler@thehartford.com> 03/24/05 3:47 PM >>>
George,

Attached is a draft of a Conditional Release for your review. Please forward
your revisions at your convenience.

Chris

-----Original Message-----
From: George Zimmerman [mailto:GZIMMERM@skadden.com]
Sent: Tuesday, March 22, 2005 6:04 PM
To: chris.butler@thehartford.com
Cc: heineman@sgcib.com
Subject: SG Cowen/Bakers

Chris:

As a follow-up to yesterday's conversation and my previous email which
I just sent to all carriers, please forward me The Hartford's draft
conditional release so that we can have it in hand for review by noon
tomorrw.  Thanks.

George

---------------------------------------------------------------------------
--
****************************************************
This e-mail and any attachments thereto, is intended only for use by the
addressee(s) named herein and may contain legally privileged and/or
confidential information. If you are not the intended recipient of this
e-mail, you are hereby notified any dissemination, distribution or copying
of this email, and any attachments thereto, is strictly prohibited. If you
receive this email in error please immediately notify me at (212) 735-3000
and permanently delete the original copy and any copy of any e-mail, and any
printout thereof.

Further information about the firm, a list of the Partners and their
professional qualifications will be provided upon request.
*******************************************************
===========================================================================
==

*************************************************************************
PRIVILEGED AND CONFIDENTIAL: This communication, including attachments, is
for the exclusive use of addressee and may contain proprietary,
confidential and/or privileged information. If you are not the intended
recipient, any use, copying, disclosure, dissemination or distribution is

Case 1:05-cv-11186-PBC Document 22-3 Filed 11/09/2005 Page 19 of 29

strictly prohibited. If you are not the intended recipient, please notify
the sender immediately by return e-mail, delete this communication and
destroy all copies.
*************************************************************************

## AGREEMENT AND CONDITIONAL CLAIM RELEASE

This Agreement and Conditional Claim Release is entered into by and between Twin City Fire Insurance Company ("Twin City) and Societe Generale, New York Branch ("SG Cowen"). The Agreement and Conditional Claim Release shall become effective when fully executed.

WHEREAS, Twin City insured SG Cowen pursuant to an Excess Financial Products Insurance Policy No. NDF0130761 (the "Twin City Policy") which, subject to and in accordance with all of its terms and conditions, provides certain coverage in excess of a Primary Policy issued by Lloyd's, Policy No. 509/QA500298 and Excess Policies issued by National Union Fire Insurance Company of Pittsburg PA, Policy No. 861-76-44 (the "National Union Policy"), Gulf Insurance Group, Policy No. GA0280251 (the "Gulf Policy") and Executive Risk Indemnity, Inc., Policy No. 152-12902-98 (the "Executive Risk Policy"), (collectively the "Underlying Excess Policies")

WHEREAS, the Twin City Policy, follows form to and provides or limits coverage pursuant to all of the terms and conditions of the Primary Policy and the Underlying Excess Policies, unless otherwise excluded, modified or limited by the terms and conditions of the Twin City Policy;

WHEREAS, the Twin City Policy affords an aggregate limit of liability of $15 million excess of the aggregate limit of liability of $55 million provided by the Primary Policy and Underlying Excess Policies which is excess of SG Cowen's self insured retention of $2.5 million;

WHEREAS, SG Cowen has sought coverage under the Twin City Policy, the Primary Policy and the Underlying Excess Policies in connection with claims asserted

against it in an action brought by Janet Baker, James Baker, JKBaker LLC, a Delaware limited liability company, and JMBaker LLC, a Delaware limited liability company (collectively "Bakers") styled <u>Baker et al. v. KPMG LLP et al.</u>, No. 02-CV-10305-PBS pending in the District Court for the District of Massachusetts, and an action brought by Robert Roth, Paul Bamberg, and Donald B. Fletcher, Jr., as Trustees of the Paul G. Bamberg Trust, and Cherry F. Bamberg and Donald Fletcher, Jr., as Trustees of the Cherry F. Bamberg Trust (the "Bambergs") styled <u>Roth et al. v. KPMG LLP et al.</u>, No. 02-CV-10304-PBS pending in the District Court for the District of Massachusetts, which actions (collectively the "Actions") were consolidated, alleging claims, *inter alia,* against SG Cowen based on a variety of legal theories, including but not limited to fraud and negligence, and asserting rights to recover damages against SG Cowen (hereinafter referred to as the "Baker and Bamberg litigation");

WHEREAS, the SG Cowen contends that Twin City is obligated to provide coverage under the Twin City Policy for the claims asserted in the Baker and Bamberg litigation and Defense Costs and other Claims Expenses incurred therein

WHEREAS, Twin City and SG Cowen dispute whether coverage is available under the Twin City policy, in whole or in part, for the claims alleged in the Baker and Bamberg litigation and Twin City and SG Cowen dispute the reasonableness of the Defense Costs and other Claims Expenses incurred therein;

WHEREAS, in return for the payment and receipt of good and valuable consideration, Twin City and SG Cowen desire to compromise, settle, waive and relinquish all possible demands, claims or rights which they may have including but not limited to any and all demands, claims or rights arising in any manner from, or connected in any manner with the Baker and Bamberg litigation, with the exception of any issues related to or in any way concerning the

2

reasonableness of Defense Costs and other Claims Expenses incurred in the Baker and Bamberg litigation, subject to the terms and conditions of this agreement;

WHEREAS, Twin City and SG Cowen dispute the reasonableness of Defense Costs and Claims Expenses incurred in the Baker and Bamberg litigation;

NOW, THEREFORE, in consideration of the mutual covenants set forth and the payments provided for herein, and other good and valuable consideration the receipt and adequacy of which is hereby acknowledged, and in accordance with the foregoing recitals it is hereby stipulated and agreed by and between Twin City on the one hand, and the SG Cowen on the other hand, as follows:

1. Twin City shall make a payment in the amount of Seven Million Five Hundred Thousand Dollars($7,500,000.) (the "Settlement Payment") toward the funding of the settlement of the Baker and Bamberg litigation pursuant to the terms of the Settlement Agreement entered into between SG Cowen and the plaintiffs in the Baker and Bamberg litigation. SG Cowen will make a payment in the amount of Seven Million Four Hundred Twenty Nine Thousand Five Hundred Ninety Dollars ($7,429,590.) toward the funding of the settlement of the Baker and Bamberg litigation.

2. Twin City and SG Cowen agree that each party reserves its respective rights to dispute the reasonableness of Defense Costs and other Claims Expenses incurred in the course of the Baker and Bamberg litigation and no payment by Twin City or SG Cowen toward funding the settlement of the Baker and Bamberg litigation will prejudice the rights of either party. In no

3

event shall Twin City pay more than a total of $15 million toward the funding of the settlement and reimbursement of Defense Costs and other Claims Expenses, collectively.

3.    This Agreement is effective upon execution by Twin City and SG Cowen; provided, however, that in the event the Settlement of the Baker and Bamberg litigation is not finally consummated for any reason, then (a) this Agreement shall be void *ab initio*; neither this Agreement, nor any negotiations, proceedings, or conversations had or statements made in connection with this Agreement, shall be used or referred to by any of the Parties hereto in any manner or for any purpose; and the Parties shall otherwise be restored to their respective positions immediately prior to the execution and delivery of this Agreement.

4.    In consideration of the agreement by Twin City described above, as well as any additional consideration, the receipt and adequacy of which is hereby acknowledged, SG Cowen, on its own behalf and on behalf of its past, present or future trustees, agents, heirs, executors, administrators, assigns, partners, principals and all persons or entities claiming through any of the foregoing, hereby release and forever discharge Twin City and all of its past, present or future trustees, agents, employees, attorneys, companies, divisions, affiliates, subsidiaries, predecessors, successors, heirs, executors, administrators, owners, assigns, directors, partners, principals, officers, employees, insurers and reinsurers, and representatives of any of them, and all persons acting by, through, under or in concert with, or any of it, from and with respect to any and all manner of action or actions, cause or causes of action of any nature, whether class derivative, or individual in nature, in law or in equity, for indemnity or otherwise, claims, demands, suits, obligations, debts, liens, damages, losses, attorneys' fees, costs, contracts, agreements, promises, controversies, judgments and demands, rights or liabilities, of any nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or

4

contingent that SG Cowen ever had, now has, claims to have or in the future may have, arising from, in connection with or in any way related to Baker and Bamberg litigation with the sole exception of the dispute with Twin City as to the reasonableness of Defense costs and other Claims Expenses referred to in paragraph 2 above.

5.    In consideration of and subject to the mutual promises, representations, warranties and undertakings set forth herein Twin City, on its own behalf and on behalf of all of its past, present or future trustees, agents, employees, attorneys, companies, divisions, affiliates, subsidiaries, predecessors, successors, heirs, executors, administrators, owners, assigns, directors, partners, principals, officers, employees, insurers and reinsurers, and representatives of any of them, and all persons acting by, through, under or in concert with, hereby releases and forever discharges SG Cowen and all of its past, present or future trustees, agents, heirs, executors, administrators, assigns, partners, principals and all persons claiming through any of the foregoing, from and with respect to any and all manner of action or actions, cause or causes of action of any nature, whether class derivative, or individual in nature, in law or in equity, for indemnity or otherwise, claims, demands, suits, obligations, debts, liens, damages, losses, attorneys' fees, costs, contracts, agreements, promises, controversies, judgments and demands, rights or liabilities, of any nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent that Twin City ever had, now has, claims to have or in the future may have, arising from, in connection with or in any way related to the claims asserted in Baker and Bamberg litigation with the sole exception of the dispute with SG Cowen as to the reasonableness of Defense costs and other Claims Expenses referred to in paragraph 2 above.

6.    SG Cowen acknowledges, represents and warrants that it has not assigned, sold, transferred, or otherwise disposed of any of the causes of action, claims or other matters,

which are being released hereby. If, contrary to this representation and warranty, SG Cowen assigns or has assigned such rights to any other person or entity, then SG Cowen shall defend, indemnify and hold harmless the other Party with respect to any claim or action brought by any assignee of any interest assigned contrary to this representation and warranty.

7.      This Agreement and Conditional Release is entered into to facilitate the funding of the settlement of the Baker and Bamberg litigation, and neither the execution of, nor the performance of any of the terms of this Agreement shall constitute or be construed as an admission by Twin City or SG Cowen of any liability or of the existence of insurance coverage, or of any fact or indication that any claim of any Party against any other Party has any merit.

8.      Each of the Parties and/or their counsel has reviewed this Agreement and understands the releases, representations and all other matters set forth herein and any dispute about the meaning of any part of this Agreement shall be construed as if the Agreement were jointly drafted.

9.      This Agreement sets forth the entire agreement of the Parties and supercedes any prior agreements or understandings between them relating to the Twin City Policy and the Parties are not relying on any statement, representation, promise or inducement not expressly set forth herein.

10.      This Agreement may be amended or modified only by a written instrument signed by the Parties.

11.      This Agreement may be executed in one or more counterparts, and in both original form and one or more photocopies, each of which shall be deemed an original, but all of which together shall be deemed to constitute one and the same instrument.

6

IN WITNESS THEREOF, the Parties have caused their signatures to be affixed hereto on the dates set forth below.

SG COWEN, NEW YORK BRANCH

By:_____

Title:_____

TWIN CITY FIRE INSURANCE COMPANY

By:_____

Title:_____

Q:\D&O Claims\Butler\SGcowenconditionalrelease.doc

7

# EXHIBIT F

**Status of Discovery Requests After "Meet and Confer"**

| Discovery Request | Scope of Request After Meet and Confer | Twin City's Position |
|---|---|---|
| INTERROGATORY NOS. 1 – 2 | Unchanged. | No objection. |
| INTERROGATORY NOS. 3 – 5<br><br>Audit of SG Cowen's legal expenses | Now limited to Twin City's understanding of (1) what defense costs had already been paid and what remained to be paid at the time the Release was signed, and (2) what defense costs Twin City had not yet looked at and knew were pending or about to be submitted at the time of the Release. | Objected to. |
| INTERROGATORY NOS. 6 – 7<br><br>Twin City's reinsurance and reserves | Now limited to (1) what Twin City's reserves were before the settlement of the Baker Litigation was consented to, (2) what Twin City's reserves were in the interim period between the approval of the settlement of the Baker Litigation and the execution of the Release, (3) what Twin City's reserves were after the Release was executed, and (4) any communications with the reinsurers that refer to the status of the Baker claim following the execution of the Release. | Objected to. |
| INTERROGATORY NO.8<br><br>Affirmative Defenses in Answer and Counterclaim | Now limited to all facts pertaining to the Release and Breach of Release. | Objected to. |

NY-398323 v3

| Discovery Request | Scope of Request After Meet and Confer | Twin City's Position |
|---|---|---|
| DOCUMENT REQUEST NOS. 1 – 3<br><br>Allegations contained in the Complaint, Answer, Counterclaim, and Affirmative Defenses | Now limited to all documents pertaining to the Release and Breach of Release. | Objected to. |
| DOCUMENT REQUEST NOS. 4 – 6 | Unchanged. | No objection. |
| DOCUMENT REQUEST NOS. 7 – 12<br><br>Audit of SG Cowen's legal expenses | Now limited to Twin City's understanding of (1) what defense costs had already been paid and what remained to be paid at the time the Release was signed, and (2) what defense costs Twin City had not yet looked at and knew were pending or about to be submitted at the time of the Release. | Objected to. |
| DOCUMENT REQUEST NOS. 13 –15<br><br>Twin City's reinsurance and reserves | Now limited to (1) what Twin City's reserves were before the settlement of the Baker Litigation was consented to, (2) what Twin City's reserves were in the interim period between the approval of the settlement of the Baker Litigation and the execution of the Release, (3) what Twin City's reserves were after the Release was executed and (4) any communications with the reinsurers that refer to the status of the Baker claim following the execution of the Release. | Objected to. |