UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SG COWEN & CO., LLC, <br><br> Plaintiff, <br><br> v. <br><br> TWIN CITY FIRE INSURANCE COMPANY, <br><br> Defendant. | ) <br> ) <br> ) <br> ) Civil Action No. 05-11106-PBS <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**TWIN CITY FIRE INSURANCE COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
FOR LEAVE TO AMEND ANSWER AND COUNTERCLAIM**

Defendant Twin City Fire Insurance Company ("Twin City") respectfully submits this Memorandum in Support of its Motion for Leave to Amend its Answer and Counterclaim as follows.

Twin City seeks leave to amend its Answer and Counterclaim because of the Plaintiff's ostensible misunderstanding and consequent mischaracterization of Twin City's affirmative defenses and Counterclaim. The Amendment is necessary in light of Plaintiff SG Cowen & Co., LLC's ("SG Cowen") repeated attempts to avoid the central dispute in this case by mischaracterizing Twin City's position on the effect of the Agreement and Conditional Release ("the Release") on the Plaintiff's right to seek recovery of disputed Defense Costs that Twin City has set off against its payment under the Policy.

The central dispute between the parties arises out of the Plaintiff's determination to file a complaint against Twin City which ignores the plain language of the Release. The Release settled all claims between the parties "with the sole exception of the dispute with Twin City as to

the reasonableness of the Defense Costs and other Claims Expenses, and SG's right to seek full recovery of the Defense Costs and Other Claims Expenses." Plaintiff's complaint, however, contains not a single reference to the disputed "Defense Costs and Other Claims Expenses" (hereafter, "Defense Costs"). Instead the complaint seeks recovery of what the Plaintiff generally asserts is the "full amount due from [Twin City] under the Policy," without regard to the reasonableness of the Defense Costs deducted by Twin City, which was the sole exeception to the settlement reached between the parties.

In its numerous filings in opposition to Twin City's Motion for Protective Order, SG Cowen has falsely accused Twin City of taking the position that Plaintiff is barred from asserting its right to recover the approximately $6.8 million of Defense Costs that Twin City originally disputed and set off against its payment under the Policy.[1] This accusation could not be further from the truth, as evidenced by Twin City's Answers to Plaintiff's Interrogatories and the deposition testimony of Christopher Butler.

In its answer to Plaintiff's Interrogatory No. 8, dated November 14, 2005, Twin City affirmed SG Cowen's right under the Release to seek full recovery of that portion of the Defense Costs that Twin City claims were unreasonable and unnecessary and which it set off against the amount which SG Cowen claims is due under the Policy.[2] Twin City's representative, Christopher Butler, who negotiated the Release on Twin City's behalf, reaffirmed this position during his deposition on Monday, November 28, 2005. (Attached as Exhibit A hereto are

---

[1] For example, in its Memorandum in Opposition to Motion for Protective Order, SG Cowen asserts: "*Although Twin City has never expressly acknowledged it in its papers*, the natural consequence of its reading [of the Release] is that SG Cowen released the right to recover this $6.85 million representing the unpaid portion of the settlement amount since, in Twin City's view, SG Cowen can only sue for defense costs, and all of the defense costs have been paid." Memorandum at 13 (emphasis added).

[2] Following Twin City's recent payment of $1.4 million, there remains in dispute $5.4 million in Defense Costs that Twin City determined to be unreasonable and unnecessary and set off against its payment under the Policy. Twin City has never disagreed with SG Cowen's right to dispute Twin City's position on the reasonableness of those costs, and to seek to recover them.

excerpts from the deposition). Mr. Butler repeatedly testified when asked about the meaning of the Release that the parties intended to preserve their respective rights to contest the reasonableness of the Defense Costs incurred in connection with the Underlying Litigation.

> Q. What did you understand the words "with the exception of any issues related to or in any way concerning the reasonableness of defense costs"?
>
> A. **That each party reserved its rights to contest the reasonableness of the defense costs incurred.**
>
> …
>
> Q. Look at paragraph 2 of the release, numbered paragraph 2. "Twin City and SG agree that each party reserves its respective rights to dispute the reasonableness of the defense costs and other claims expenses incurred in the course of the Baker and Bamberg litigation." You agree with me that SG Cowen was not reserving any right to challenge the reasonableness of its own defense costs; correct?
>
> …
>
> A. They were reserving their right to dispute the reasonableness of the costs.
>
> Q. SG Cowen –
>
> A. – with Twin City.
>
> Q. In other words SG Cowen was reserving the right to resist Twin City's claims concerning the defense costs; is that what you were trying to convey here?
>
> A. I don't think necessarily that that's the case.
>
> Q. That's not what you were trying to convey?
>
> A. **I was trying to convey that Twin City and SG are agreeing to reserve their rights to dispute the reasonableness of the defense costs.**

(Exhibit A, 20:24 – 21:14) (emphasis added).

> …
>
> Q. Look at the release, if you would. If you would please look at paragraph 2. In paragraph 2, it says in part, "Each party reserves its respective rights to dispute the reasonableness of the defense costs and other claims expenses incurred in the course of the Baker and Bamberg litigation and SG reserves its right to seek full recovery of the defense costs and other claims expenses." Do you see that language?

- 3 -

  A. Yes.

  Q. Okay. The language, "and SG reserves its right to seek full recovery of the defense costs and other claims expenses" refers to what, in your opinion?

  A. **The amount that was offset based on defense costs that were deemed to be unreasonable or unverified.**

(Exhibit A, 73:25 – 74:18) (emphasis added).

Notwithstanding that Twin City has clearly articulated its position in its sworn answers to interrogatories and deposition testimony, Twin City believes that its proposed First Amended Answer and Counterclaim is necessary to remove any cause for misunderstanding or mischaracterizing its position.

  Under Fed. R. Civ. P. 15(a), leave to amend "shall be freely given when justice so requires." Both the Supreme Court and this Court have recognized the importance of this mandate. See Continental Cablevision, Inc. v. Storer Broadcasting Co., 653 F.Supp. 451, 459 (D. Mass. 1986) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962) (allowing motion for leave to amend to assert affirmative defenses of privilege). According to the Supreme Court, Rule 15(a) requires that the Court grant leave to amend unless there is:

> undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment [or] futility of the amendment.

  None of the reasons for denying leave to amend are present in this case. On the contrary, Twin City has determined in good faith that the Amended Answer and Counterclaim will remove any misapprehension as to Twin City's position on the remaining Defense Costs at issue and will focus the parties attention on the central dispute in this case.

## Conclusion

For the foregoing reasons, this Court should grant Twin City's Motion for Leave to Amend Answer and Counterclaim.

December 2, 2005                              TWIN CITY FIRE INSURANCE COMPANY,
                                              By its attorneys,


                                              /s/ Steven D. Morris
                                              John D. Hughes (BBO# 243660)
                                              Craig Stewart (BBO # 480440)
                                              Mary Patricia Cormier (BBO# 635756)
                                              Steven D. Morris (BBO# 645093)
                                              EDWARDS ANGELL PALMER & DODGE, LLP
                                              111 Huntington Avenue
                                              Boston, MA  02199
                                              (617) 239-0164


### CERTIFICATE OF SERVICE

I, Steven D. Morris, hereby certify that on this 2nd day of December, 2005, I served a copy of the foregoing document via first class mail, postage prepaid to Wm. Shaw McDermott and Aimee E. Bierman at Kirkpatrick & Lockhart Nicholson Graham LLP, 75 State Street, Boston, MA 02109-1808.

                                              /s/ Steven D. Morris
                                              Steven D. Morris

Page 18

```
 1           C. Butler
 2   reasonableness of the defense costs; were they?
 3        A.   They were disputing them with Twin
 4   City.
 5        Q.   You're referring now, in this
 6   release, to the dispute between Twin City and SG
 7   Cowen as to the reasonableness of the defense
 8   costs. This is just not perfectly worded
 9   perhaps?
10        A.   Perhaps.
11             MR. STEWART: Objection.
12        Q.   Would you regard it as ambiguous,
13   the language?
14        A.   No.
15             MR. STEWART: Objection.
16        Q.   You would not. You regard it as
17   clear?
18        A.   Yes.
19        Q.   You regard it as clear that SG Cowen
20   was disputing the reasonableness of its own
21   defense costs?
22        A.   That SG Cowen and Twin City were
23   disputing the reasonableness, yes.
24        Q.   But you agree with me that SG Cowen
25   was not claiming that the defense costs were
```

Page 19

```
 1           C. Butler
 2   unreasonable?
 3        A.   That is correct.
 4        Q.   Let's go to the next whereas clause.
 5   Do you want to refer me to something in there?
 6        A.   If you go to the last line on page
 7   2, "with the exception of any issues related to
 8   or in any way concerning the reasonableness of
 9   defense costs and other claims expenses incurred
10   in the Baker and Bamberg litigation."
11        Q.   I'm going to parse that whereas
12   clause just so that we have, if we read the
13   transcript, an understanding of where those words
14   appear. "Whereas in return for the payment of
15   good and valuable consideration, Twin City and SG
16   desire to compromise," and I'm skipping now,
17   "claims or rights," I'm skipping again,
18   "connected in any manner with the Baker and
19   Bamberg litigation with the exception of any
20   issues related to or in any way concerning the
21   reasonableness of defense costs and other claims
22   expenses incurred in the Baker and Bamberg
23   litigation subject to the terms and conditions of
24   this agreement."
25             I would like to direct your
```

Page 20

```
 1           C. Butler
 2   attention to the phrase you read, compromise
 3   claims "with the exception of any issues related
 4   to or in any way concerning the reasonableness of
 5   defense costs."
 6             Did you have anything particular in
 7   mind when you drafted that language? You drafted
 8   that language, right?
 9        A.   I'm not sure.
10        Q.   You know you did.
11             MR. STEWART: Objection.
12        A.   I don't.
13        Q.   You don't recall?
14        A.   I told you I'm not sure.
15        Q.   Did you do the first draft of the
16   release?
17        A.   Yes.
18        Q.   Did this language stay in the
19   release from the first draft to the end; do you
20   remember?
21        A.   Do you have a copy of the first --
22        Q.   I'm asking you if you remember.
23        A.   I don't recall.
24        Q.   What did you understand the words
25   "with the exception of any issues related to or
```

Page 21

```
 1           C. Butler
 2   in any way concerning the reasonableness of
 3   defense costs"?
 4        A.   That each party reserved its rights
 5   to contest the reasonableness of the defense
 6   costs incurred.
 7        Q.   The language is, "with the exception
 8   of any issues related to or in any way concerning
 9   the reasonableness of defense costs."
10             That's very broad language; correct?
11        A.   Yes. Well, broad in the context of
12   dealing with the reasonableness of defense costs.
13        Q.   Look at paragraph 2 of the release,
14   numbered paragraph 2. "Twin City and SG agree
15   that each party reserves its respective rights to
16   dispute the reasonableness of the defense costs
17   and other claims expenses incurred in the course
18   of the Baker and Bamberg litigation." You agree
19   with me that SG Cowen was not reserving any right
20   to challenge the reasonableness of its own
21   defense costs; correct?
22             MR. STEWART: Objection.
23        A.   They were reserving their right to
24   dispute the reasonableness of the costs.
25        Q.   SG Cowen --
```

Greenhouse Reporting, Inc.                                  (212)279-5108

Page 70

```
1              C. Butler
2    that was not true; was it?
3        A.   I --
4            MR. STEWART: Objection.
5        A.   I don't know what -- I mean, whether
6    people thought it was true at the time. All I
7    know is that we've determined that they were
8    entitled to $1.4 million plus an additional
9    100,000, and that had been paid.
10       Q.   When you say, "I don't know what
11   they thought was true," I'm asking you what you
12   know is true. You know it is true that when the
13   answer was filed, SG Cowen was entitled to
14   another $1.4 million; correct?
15           MR. STEWART: Objection. Asked and
16       answered.
17       A.   I know that I determined that
18   another $1.4 million was appropriate to be paid.
19   I don't know what I thought at the time the
20   answer was filed.
21           MR. NOVACK: Why don't we take our
22       break when he changes the tape.
23           THE VIDEO TECHNICIAN: This marks
24       the end of Tape No. 1 in the videotaped
25       deposition of Christopher Butler. We are
```

Page 71

```
1              C. Butler
2    going off the record. The time is 11:07.
3        (Recess taken.)
4            THE VIDEO TECHNICIAN: Here marks
5        the beginning of Tape No. 2 in the
6        videotaped deposition of Christopher
7        Butler. We are now back on the record.
8        The time is 11:13.
9        Q.   Mr. Butler, are you aware that there
10   is a discovery dispute pending between Twin City
11   and SG Cowen as to the scope of discovery
12   relating to parol evidence?
13       A.   Yes.
14       Q.   Did you review at any time before
15   today any of the papers submitted to the court in
16   connection with that discovery dispute?
17       A.   Not that I recall, no.
18       Q.   Do you think you saw nothing that
19   was submitted to the court in connection with the
20   discovery dispute?
21       A.   I don't remember seeing anything.
22       Q.   Do you remember, without giving me
23   the substance, being advised as to what the
24   dispute was about?
25       A.   In general terms, yes.
```

Page 72

```
1              C. Butler
2        Q.   Do you remember giving any
3    information -- again, no substance -- I didn't
4    mean to criticize the information you were
5    giving. Let me ask it again. Do you remember
6    giving any information to your counsel to assist
7    them in formulating their response in connection
8    with the discovery dispute?
9            MR. STEWART: Objection. So we're
10       clear, I'll permit the answer on the
11       basis --
12           MR. NOVACK: Let me ask it a
13       different way. I'm not trying to get into
14       the substance at all.
15           MR. STEWART: And I have to object
16       because the question is ambiguous in terms
17       of whether you're asking this witness
18       whether he provided material in response to
19       the discovery, or in response to the
20       discovery dispute.
21           MR. NOVACK: Fair. You're correct,
22       you're absolutely correct. I stand
23       corrected.
24       Q.   Did you see any papers filed by SG
25   Cowen in connection with this discovery dispute?
```

Page 73

```
1              C. Butler
2        A.   I don't remember seeing anything,
3    no.
4        Q.   So as you sit here today, you don't
5    remember seeing anything that was filed with the
6    court in connection with the discovery dispute?
7        A.   That is correct.
8        Q.   Did you have an opportunity to see
9    it if you chose to ask for it?
10       A.   I don't know. I suppose.
11       Q.   Who at the Hartford is the point man
12   who is interacting with outside counsel in
13   connection with this litigation? Is it you?
14       A.   Yes.
15       Q.   And do you make the decisions for
16   the Hartford in connection with litigation?
17           MR. STEWART: Objection.
18       Q.   The client representative?
19           MR. STEWART: Objection.
20       A.   I make some of the decisions, I
21   suppose.
22       Q.   Do you regard the release as
23   ambiguous in any way?
24       A.   No.
25       Q.   Look at the release, if you would.
```

**Page 74**

```
1              C. Butler
2    If you would please look at paragraph 2. In
3    paragraph 2, it says in part, "Each party
4    reserves its respective rights to dispute the
5    reasonableness of the defense costs and other
6    claims expenses incurred in the course of the
7    Baker and Bamberg litigation and SG reserves its
8    right to seek full recovery of the defense costs
9    and other claims expenses."
10           Do you see that language?
11       A.  Yes.
12       Q.  Okay. The language, "and SG
13   reserves its right to seek full recovery of the
14   defense costs and other claims expenses" refers
15   to what, in your opinion?
16       A.  The amount that was offset based on
17   defense costs that were deemed to be unreasonable
18   or unverified.
19       Q.  Those are the defense costs that
20   have been submitted previously to the other
21   carriers and paid by them?
22       A.  Yes.
23       Q.  At the time the release was
24   executed, you understood, did you not, there were
25   some invoices for defense costs that had been
```

**Page 75**

```
1              C. Butler
2    recently incurred, but not submitted to the
3    underlying carriers?
4        A.  I would assume yes.
5        Q.  You understood that those defense
6    costs would be in time submitted to Twin City;
7    correct?
8        A.  That is correct.
9        Q.  You understood that this release did
10   not bar SG Cowen from submitting invoices for
11   those recently incurred defense costs to Twin
12   City; correct?
13       A.  Correct.
14       Q.  You understood that if Twin City
15   chose not to pay them, SG Cowen reserved the
16   right to seek full recovery of those recently
17   incurred defense costs; correct?
18       A.  Sure.
19       Q.  So am I correct that this language,
20   "SG reserves its right to seek full recovery of
21   the defense costs and other claims expenses," at
22   least referred to those recently incurred defense
23   costs; correct?
24           MR. STEWART: Objection.
25       A.  Well, at the time the agreement was
```

**Page 76**

```
1              C. Butler
2    executed, it referred to the ones that had
3    previously been submitted. To the extent that a
4    dispute as to reasonableness arose for the
5    remaining ones, that wasn't part of the
6    agreement, but I suppose that could be dealt
7    with.
8        Q.  I'd like you to tell me whether you
9    believed at the time the release was executed
10   that there was no reservation to SG Cowen of the
11   right to seek recovery from Twin City of the
12   recently incurred defense costs, no right to do
13   it.
14       A.  I mean, they had a right to
15   reimbursement under the policy.
16       Q.  This release purports to be a
17   general release with a sole exception; correct?
18       A.  That is correct.
19       Q.  I'm asking you whether or not the
20   exception included the right to seek from Twin
21   City the payment of the recently incurred defense
22   costs that were not yet in dispute.
23       A.  They would be entitled to recover
24   them, sure.
25       Q.  And that is by virtue of the
```

**Page 77**

```
1              C. Butler
2    language that we see in paragraph 2 that I've
3    just read aloud, "SG reserves it rights to seek
4    full recovery of the defense costs and other
5    claims expenses," correct?
6        A.  That covers all the defense costs.
7        Q.  Including the recently incurred
8    defense costs, correct?
9        A.  And yet to be incurred defense
10   costs.
11       Q.  Mr. Butler, I'm switching topics,
12   just so you can bring your mind into a different
13   mind set now. Just tell me a little bit about
14   your education, where you went to school, when
15   you graduated, and then give me your job history
16   in the briefest of terms by way of overview.
17       A.  Starting with college?
18       Q.  Sure.
19       A.  I went to the College of Holy Cross.
20   I graduated in 1993. St. John's Law School 1996.
21   Thereafter, I was employed by a small firm by the
22   name of Giaimo & Vreeberg in Kew Gardens, Queens.
23   Thereafter, I was employed by a firm called
24   London Fischer in New York, New York.
25   Thereafter, I was employed by a firm called
```